Merrimack
Nos. 92-517
     93-497

THE STATE OF NEW HAMPSHIRE

v.

JAMES M. COLBERT

February 3, 1995

*Jeffrey R. Howard*, attorney general (*Michael D. Ramsdell*, senior assistant attorney general, on the brief and orally), for the State.

*Twomey & Sisti Law Offices*, of Concord (*Mark L. Sisti* and *Jonathan R. Saxe* on the brief, and *Mr. Sisti* orally), for the defendant.

JOHNSON, J. The defendant, James M. Colbert, appeals the Superior Court's (*McHugh*, J.) denial of his motions to set aside his four first degree murder convictions. The issues on appeal involve the substitution of an alternate juror for a juror who became ill in the midst of the jury's deliberations. Colbert argues that the substitution violated former RSA 500-A:13 (1983) (current version at RSA 500-A:13 (1983 & Supp. 1994)), as well as his right to a twelve-person jury and due process. He also claims ineffective assistance of counsel, and contends that the Superior Court's (*McGuire*, J.) failure to hold and record a colloquy with the excused juror violated his rights to an impartial jury, to due process, and to be present at his trial. We affirm.

In November 1991, Colbert was indicted on four counts of first degree murder for the deaths of his wife and three daughters. He pled not guilty by reason of insanity. At the start of trial, the trial court empaneled fifteen jurors, waiting until the close of evidence and the

end of its instructions to designate three of the fifteen as alternates. Although the trial court informed Colbert of these procedures before jury selection, he did not object to them at any time.

The jury deliberated for about four hours on a Friday without reaching a verdict and then reconvened the following Monday. At 10:45 that morning, the foreperson of the jury was excused due to illness. The trial transcript contains no record of any discussions concerning this dismissal. It reveals only that, following the dismissal, the court polled the three alternates for bias, substituted one for the ill juror, appointed a new foreperson, and told the reconstituted jury to begin their deliberations anew. According to Colbert's brief, his counsel never objected to the juror substitution procedure. The new jury deliberated for two hours before returning verdicts of sane, and therefore guilty, on the four indictments. Colbert appealed, raising claims unconnected to the juror substitution.

Three months after Colbert's trial, this court decided *State v. Dushame*, 136 N.H. 309, 616 A.2d 469 (1992), reversing a defendant's convictions because a mid-deliberation juror substitution violated former RSA 500-A:13, which required that alternates be discharged upon final submission of the case to the jury. Within a week, Colbert moved to set aside the jury's verdicts, citing *Dushame*. Colbert later filed a supplemental motion to set aside the verdicts, obtained new counsel, and filed two more motions, claiming ineffective assistance of trial counsel and lack of an adequate record.

At the hearing on Colbert's motions, Colbert presented the testimony of his trial counsel and a deputy clerk in an effort to fill in the gaps in the record regarding the juror substitution. Colbert served a subpoena on the judge who presided at his trial, but the Superior Court (*Gray*, J.) granted the judge's motion to quash it. The Superior Court (*McHugh*, J.) made the following relevant findings:

> At around 10:00 a.m. [on Monday, August 10, 1992], the judge received word from a bailiff that the foreperson of the jury was ill. Counsel were summoned to chambers and told of the situation. Defense counsel requested that the judge speak to the juror on the record but outside the presence of counsel, to determine the nature of her problem and whether she was able to continue deliberating. . . . Defense counsel left the chambers conference to confer with defendant.

> At the motion hearing, defendant's trial counsel Bjorn Lange recounted how he met with defendant and informed him that a juror was ill and the judge would determine whether the juror could continue. Defendant expressed concern that the judge was talking to the juror outside the

presence of counsel, but counsel reassured him that it was best that lawyers for neither side be present, and that the colloquy would be on the record. . . .

At some point, the judge received word from a bailiff that the juror was vomiting. Based on testimony of Deputy Clerk Kris Spath at the motion hearing on May 13, 1993, it appears that the Clerk, acting on the trial judge's instructions, spoke with the juror and confirmed her condition. This being the case, the judge determined that the juror was too ill to continue and that she should be discharged. No colloquy was conducted.

The superior court found Colbert's claims of error meritless and accordingly denied his motions to set aside the verdicts.

Colbert then filed a second notice of appeal with this court, based on the juror substitution issues. This court accepted that appeal and consolidated it with his first one. We note that Colbert's brief and oral argument contain no mention of the points raised in his first notice of appeal. Those claims are therefore waived. *See State v. Field*, 132 N.H. 760, 765, 571 A.2d 1276, 1279 (1990).

■ We first address Colbert's contention that the trial court's juror substitution violated former RSA 500-A:13, as well as his State constitutional right to a twelve-person jury and his State and federal constitutional rights to due process. We deem these issues to be raised as in a direct appeal. As in *State v. Dushame*, the trial court violated former RSA 500-A:13. *See Dushame*, 136 N.H. at 314, 616 A.2d at 472. Colbert's convictions, however, cannot be overturned on this statutory basis because, unlike Dushame, he did not object below to any aspect of the substitution process. *See id.* at 312, 616 A.2d at 470–71; *see also State v. Ryan*, 135 N.H. 587, 588–89, 607 A.2d 954, 955 (1992). For the same reasons, Colbert's due process claim is not properly before us.

■ Regarding the twelve-person jury issue, Colbert accurately notes that our usual contemporaneous objection rule does not apply. *State v. Hewitt*, 128 N.H. 557, 561, 517 A.2d 820, 822 (1986). A defendant relinquishes the right to a jury of twelve only by express, personal waiver. *Id.* Colbert also correctly points out that the trial record is devoid of such a waiver. The absence of a waiver, however, is irrelevant here because Colbert never surrendered his right to a twelve-person jury. In *Hewitt*, the defendant was convicted by a jury of eleven. In this case, the ill foreperson was replaced by one of the alternate jurors, not merely dismissed, thereby maintaining the required complement of twelve.

The dissent focuses on a paragraph in *Dushame* to argue that a trial judge violates a defendant's right to a twelve-person jury if the jury includes a person who is not, by statute, technically a juror. This paragraph, however, is at variance with a sentence following it: "We do not here consider the constitutional implications of late substitution [of a juror]." *Dushame*, 136 N.H. at 315, 616 A.2d at 472. Hence, the paragraph relied on by the dissent is dicta on the issue before us in this case. Later, moreover, a unanimous court expressed the opinion that late substitution would not violate a defendant's right to a trial by jury under part I, article 15 of the New Hampshire Constitution, so long as "procedural mechanisms are utilized to protect the parties' rights." *Opinion of the Justices (Alternate Jurors)*, 137 N.H. 100, 103, 623 A.2d 1334, 1336 (1993). These mechanisms include establishing a valid reason for juror discharge, polling the substitute for bias, and instructing the jury to begin deliberating anew. *Id.* at 104–05, 623 A.2d at 1337–38. Our reasoning in that opinion remains sound, and we reaffirm it here.

A defendant's State constitutional right to a jury trial incorporates the right to a jury of twelve, *see Hewitt*, 128 N.H. at 558, 517 A.2d at 820, and the right to a fair and impartial jury, *see State v. Smart*, 136 N.H. 639, 646, 622 A.2d 1197, 1202, *cert. denied*, 114 S. Ct. 309 (1993). Thus, under *Opinion of the Justices (Alternate Jurors)*, if a trial court employs the proper precautions, late substitution satisfies both components of the right to a trial by jury. These precautions, however, affect only the fairness and impartiality of the jurors, not their number. Thus, such precautions are unnecessary to protect the right to a twelve-person jury. It follows that, regardless of the procedural mechanisms employed, late substitution does not in itself violate a defendant's right to a twelve-person jury. *Opinion of the Justices (Alternate Jurors)* modifies the dicta relied on by the dissent; we therefore cannot agree with the conclusions reached by the dissent.

As noted, the right to a fair and impartial jury is violated when a trial court fails to use appropriate safeguards, but a contemporaneous objection is required to preserve this issue for appeal. *Cf. Ryan*, 135 N.H. at 588–89, 607 A.2d at 955 (claim that trial court's nonrandom selection of foreperson violated defendant's right to fair and impartial jury not addressed on appeal because not raised below); *Hewitt*, 128 N.H. at 560, 517 A.2d at 822 (listing examples where defendant's personal waiver not necessary to relinquish constitutional right). Here, there was no such objection.

We next address Colbert's State and federal constitutional claims of ineffective assistance of counsel. To support these claims, Colbert cites his trial counsel's failure to object to the juror substitution process or explain to him the relevant provisions of former RSA 500-A:13 and part

I, article 15 of the New Hampshire Constitution. Colbert notes that when his trial counsel told him the trial judge was speaking with a juror about a possible illness, he expressed concern about his counsel's absence from these discussions.

The State and federal standards for analyzing an ineffectiveness claim are identical. *State v. Pitts*, 138 N.H. 147, 151, 635 A.2d 1356, 1359 (1993). "Therefore, while we decide the State issue independently, using federal precedent only for its help in dealing with the State issue, the analysis and result is the same under each constitution." *State v. Glidden*, 127 N.H. 359, 361, 499 A.2d 1349, 1350 (1985) (citations omitted).

To prove his claim of ineffectiveness, Colbert must

> [f]irst . . . show that counsel's performance was deficient, which requires proof that counsel made such egregious errors that counsel was not functioning as the "counsel" guaranteed by both constitutions. Second, the defendant must prove that counsel's conduct actually prejudiced the defendant such that there is a reasonable probability that the result of the proceeding would have been different had counsel been competent.

*Pitts*, 138 N.H. at 151–52, 635 A.2d at 1359 (quotation and citation omitted). In this context, Colbert's burden to prove a difference in "the result of the proceeding," *id.* at 152, 635 A.2d at 1359, means he must show a reasonable probability that he would have been acquitted. *See State v. Chase*, 135 N.H. 209, 212–13, 600 A.2d 931, 934 (1991).

■ "The key to an ineffective assistance of counsel claim is a showing of actual prejudice." *Humphrey v. Cunningham, Warden*, 133 N.H. 727, 733, 584 A.2d 763, 767 (1990). "If the defendant is unable to demonstrate such prejudice, we need not even decide whether counsel's performance fell below the standard of reasonable competence," *State v. Faragi*, 127 N.H. 1, 5, 498 A.2d 723, 726 (1985), unless prejudice can be presumed. "[P]rejudice is presumed only where circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all." *Humphrey*, 133 N.H. at 737, 584 A.2d at 769 (quotation omitted).

■ Colbert argues that we should presume prejudice here because the trial court deprived him of his State constitutional right to a twelve-person jury without an express, personal waiver. As explained above, Colbert was not denied a twelve-person jury. His argument, therefore, cannot succeed. Moreover, after reviewing the record of Colbert's trial, we cannot find that he "was in effect denied any meaningful assistance at all." *Id.* (quotation omitted).

Colbert makes no claim of actual prejudice resulting from his trial attorneys' alleged errors, and suggests only that the dismissed juror may have been a lone dissenter in favor of acquittal. This, of course, is pure speculation, and Colbert presents no evidence to substantiate it. *See Pitts*, 138 N.H. at 152, 635 A.2d at 1359. Colbert cites nothing to show a reasonable probability that the jury would have acquitted him.

■ Finally, we address Colbert's argument that, by failing to hold and record a colloquy with the dismissed juror about her illness, the trial court violated his State constitutional rights to be present at his trial, to an impartial jury, and to due process. *Cf. State v. Brodowski*, 135 N.H. 197, 201, 600 A.2d 925, 927 (1991) (trial court's duty to record its *ex parte* discussions with prospective jurors). Failure to record a discussion that never took place is, of course, not a justiciable issue, but the trial court should have recorded as much of the proceedings regarding the juror dismissal as practicable, such as the court's conversations with the deputy clerk and bailiff. Failure to do so, however, was harmless. The testimony at the post-trial hearing provided an adequate basis for appellate review, and Colbert admits he never objected to the dismissal or asked to review a record at trial. *Cf. State v. Castle*, 128 N.H. 649, 652, 517 A.2d 848, 850 (1986) (trial court has duty to record its *ex parte voir dire* because record permits appellate review, ensures impartial jury, and protects opportunity to be heard).

■ As for the lack of a colloquy, we find no error in the court's decision to delegate the task of questioning the juror to its deputy clerk. Vomiting is an obvious sign of illness, usually justifying immediate dismissal whatever the cause. When the bailiff reported the juror's symptoms to the court, confirmation was all that was required. For this, the court was entitled to rely upon its deputy clerk. Although on appeal Colbert disputes the juror's true medical condition, he does not challenge the credibility of the deputy clerk or otherwise explain why the court's reliance on her was misplaced. At trial, Colbert only asked that the court speak with the juror on the record. It would have been preferable for the trial court to have told him such a conversation had not taken place, but Colbert had no right to insist on a personal colloquy between court and juror under these circumstances.

*Affirmed.*

BATCHELDER, J., concurred specially; HORTON, J., dissented; the others concurred.

BATCHELDER, J., concurring specially: I concur in the result reached by the majority. In my view, the defendant's right at issue in *State v. Dushame*, 136 N.H. 309, 616 A.2d 469 (1992), was a statutory right; we held reversal to be the proper remedy for violation of that right because the statute "touche[d] upon the integrity of the deliberative process of the jury," *id.* at 315, 616 A.2d at 472, and was therefore constitutional in flavor. *Id.* Because the defendant in this case was not deprived of a twelve-person, constitutionally adequate jury, I cannot agree with the dissent that no objection by the defendant at trial was required to preserve the issue for appeal. It is this failure to object that sets this case apart from *Dushame*.

I agree with the majority that trial counsel's failure to object did not constitute ineffective assistance of counsel. The United States Supreme Court has recently refined the prejudice inquiry of the ineffectiveness analysis to "focus[] on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 113 S. Ct. 838, 844 (1993). Because the trial judge, by polling the alternate and directing the jury to begin deliberations anew, followed the procedures we subsequently outlined in *Opinion of the Justices (Alternate Jurors)*, 137 N.H. 100, 104–05, 623 A.2d 1334, 1337–38 (1993), I cannot conclude that counsel's omission resulted in prejudice as thus defined.

HORTON, J., dissenting: This case is controlled by *State v. Dushame*, 136 N.H. 309, 616 A.2d 469 (1992). I do not believe *Dushame* can be distinguished, and I would follow its holding on post-submission juror substitution.

The majority would distinguish *Dushame* by suggesting that the defendant, in the case before us, failed to object to the jury substitution procedure. It would find this distinction crucial and would reject the defendant's claim that he was convicted of a jury of less than twelve in violation of the New Hampshire Constitution. It would find inapplicable the rules of *State v. Hewitt*, 128 N.H. 557, 561, 517 A.2d 820, 822–23 (1986), that no objection is necessary to preserve rights to challenge the absence of a constitutional jury and that the right to a jury of twelve may be waived only by an express personal waiver. It maintains that there were twelve jurors deciding the case, albeit one substituted post-submission. It suggests that the defendant had nothing to waive and did not surrender his right to a twelve-person jury.

And therein lies my problem. Under the ruling in *Dushame*, there were not twelve jurors deciding this case, only eleven. The structural jury problem in this case is precisely the same as existed in *Dushame*. The presence or absence of an objection, as dictated by *Hewitt*, does not control the propriety of such a structural challenge. *Dushame*

specifically found a violation of a right provided by the New Hampshire Constitution, the independent and free-standing right to a jury of twelve. *Dushame* says:

> The New Hampshire Constitution mandates that a jury of twelve must unanimously reach a verdict of guilty before a defendant's liberty may be compromised. *See State v. Hewitt*, 128 N.H. 557, 561, 517 A.2d 820, 822 (1986) (State constitution affords accused right to jury of twelve, and "twelve means twelve"). As stated, RSA 500-A:13 mandates that upon the submission of the case to the jury the alternates "shall be discharged"; in short, they are no longer members of the jury panel. Once discharged from the jury panel a juror cannot be recalled by the trial court. In this case, a jury of only eleven qualified jurors decided the defendant's fate. This is in direct violation of our State constitutional mandate.

*State v. Dushame*, 136 N.H. at 315, 616 A.2d at 472.

Thus, when the case against Mr. Colbert was submitted to the jury, the alternates were discharged, the statute being essentially self-executing, and when the forewoman departed, although twelve seats were filled, only eleven were filled by "jurors."

The majority opinion says that its holding regarding the State Constitution is consistent with *Dushame* and our opinion reviewing the post-*Dushame* proposed legislation amending RSA 500-A:13, *Opinion of the Justices (Alternate Jurors)*, 137 N.H. 100, 623 A.2d 1334 (1993). The language quoted, and the issue in the later case, involved the due process aspects of *late* substitution, not the structural problem of a missing juror.

I respectfully dissent from the opinion of the majority and would reverse on the State constitutional twelve-man jury issue.