Colbert v. NH State Prison          CV-95-473-B    07/29/96
**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


James Colbert

    v.                                          Civil No. 95-473-B

Michael J. Cunningham, Warden
New Hampshire State Prison


**O R D E R**

    James Colbert asserts in a habeas corpus petition that the state court's substitution of an alternate juror for an incapacitated juror during deliberations violated his federal due process rights.  He also contends that his counsel's failure to properly inform him of his rights pertaining to the ill juror and to object to the substitution of the alternate juror violated his right to effective assistance of counsel.  For the reasons that follow, I deny his petition.


**BACKGROUND**[1]

    Colbert confessed to killing his wife and three daughters, but argued at trial that he was not guilty of murder because he

---

    [1] Unless otherwise noted, the background facts are taken from the state court's Order on Defendant's Motions to Set Aside Verdicts, No. 91-S-863-866 (July 1, 1993) and State v. Colbert, 139 N.H. 367 (1995).  See 28 U.S.C.A. § 2254(d).

was insane. Fifteen jurors were impanelled for Colbert's murder trial, which began on July 28, 1992, and all fifteen sat through the trial before the alternates were designated. At the conclusion of the trial, the court chose three jurors at random as alternates and then designated a jury foreperson. The three alternates remained in the courthouse separated from the jury.

After deliberating for four hours on Friday afternoon, August 7, the jury notified the court that it wanted to adjourn for the weekend and listen to the tape of Colbert's confession when it resumed its deliberations. The court then met with the alternates and the jury members separately to remind them of their obligations to preserve their impartiality.

The twelve jury members and three alternates returned on Monday. However, shortly after the jury resumed its deliberations, the jury's foreperson reported that she was ill.[2] The judge summoned counsel who were informed of the situation although no record was made of their discussion. Defense counsel asked the judge to meet with the ill juror, on the record but without counsel present, to determine whether she could continue.

_____

[2] A contemporaneous record was not made of events pertaining to the juror's illness and dismissal although the circumstances are summarized in the state court's July 1, 1993, order.

2

Defense counsel also met with Colbert to explain the circumstances, and he expressed concern that the judge was meeting with the juror without counsel. In the meantime, the juror had become so ill that she was excused from jury duty without meeting with the judge.

After the ill juror was dismissed, court reconvened on the record with counsel, Colbert, the remaining eleven jurors, and the three alternates. The court explained that the foreperson had been excused because of her illness and questioned the alternates about their impartiality:

> First, let me ask the people who were chosen as alternates last week who have remained in the courthouse, . . . , have you -- any of you three -- I've already asked the other jurors that earlier this morning -- have you discussed the case with anybody, have you heard anything about the case, have you read anything about the case or do you have any thing at all that you need to report to me which might impact on your ability to deliberate in this case in a fair and impartial manner?

Trial Transcript, August 10, 1992 at 5. All three alternates answered "no" to the judge's question, and the court chose an alternate at random to serve on the jury in place of the dismissed juror. The court then chose a new jury foreperson at random and instructed the new jury:

> I want to tell that you you're [sic] going to have to begin your deliberations all over again; you may not make reference to prior discussions in the jury

3

deliberation room, all right.  You're going to have to begin from the top.  If you have reviewed any evidence already, you're going to have to review it all again.  For example, it's the Court's understanding that you had asked for a tape recorder.  If you have played any tape that was -- that is in evidence, you must all listen to it again, okay.

  Also because you're beginning your deliberations again, I'm going to ask the bailiffs to take from you the questions and answers which were -- the questions that you gave to the Court last Friday and the answers that I wrote to you, the bailiff is going to take those and I don't want you to consider those.  I want you to begin your deliberations afresh, okay.

Id. at 6-7.

Colbert's counsel did not object to the juror substitution or the proceedings of the reconstituted jury.  The new jury did not submit questions to the court or ask to listen to the tape of Colbert's confession.  After deliberating for two hours, the new jury rejected Colbert's insanity plea and determined that he was guilty of first degree murder.

Several months after Colbert was convicted, the New Hampshire Supreme Court determined that state law prohibits a judge from substituting an alternate juror for a sitting juror after the jury begins its deliberations.[3]  State v. Dushame, 136

---

[3]  N.H. Rev. Stat. Ann. § 500-A:13, the state law cited by the court in Dushame, has been amended to permit an alternate juror to be substituted at any time prior to the verdict if a sitting juror is disqualified, becomes ill, or dies.

4

N.H. 309, 314-15 (1992). Relying on this precedent, Colbert sought a new trial in the state superior court. He also argued that: (1) the substitution of the alternate juror violated his right to due process of law and his state constitutional right to a twelve-person jury; (2) the trial court's failure to conduct and record a colloquy with the dismissed juror violated his rights under the state constitution; and (3) trial counsel was constitutionally ineffective because he failed to object to the alternate's substitution. The Superior Court denied his motions and he appealed. The New Hampshire Supreme Court determined that Colbert was procedurally barred from challenging the alternate's substitution because he failed to make a timely objection. State v. Colbert, 139 N.H. 367, 370 (1995). It rejected his state constitutional claims on their merits. Id. at 370-71. Finally, it determined that his ineffective assistance of counsel claim failed because he had not proved actual prejudice. Id. at 372-73.

In his petition for habeas corpus relief, Colbert again argues that: (1) the substitution of an alternate juror after the jury commenced its deliberations violated his due process rights; and (2) he was denied his right to counsel because trial counsel was constitutionally ineffective. The respondent, Warden

5

Cunningham, moves for summary judgment.


## STANDARD OF REVIEW

In habeas corpus proceedings, as in other civil actions,[4] summary judgment is appropriate if the facts taken in the light most favorable to the nonmoving party show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Guzman-Rivera v. Rivera-Cruz</u>, 29 F.3d 3, 4 (1st Cir. 1994). A "material fact" is one "that might affect the outcome of the suit under the governing law," and a genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). When the facts are undisputed, the moving party must establish that it is entitled to judgment as a matter of law. <u>Desmond v. Varrasso (In re Varrasso)</u>, 37 F.3d 760, 764 (1st Cir. 1994). I apply these principles in considering the respondent's motion for summary judgment.

---

[4] Fed. R. Civ. P. 81(a)(2); <u>see also</u> <u>Williams v. Scott</u>, 35 F.3d 159, 161 (5th Cir. 1994), <u>cert. denied</u>, 115 S. Ct. 959 (1995).

## ANALYSIS

Colbert's petition focuses on the trial court's decision to replace the ill juror with an alternate during the jury's deliberation.  He contends that the substitution violated his federal due process rights and that his trial counsel's representation was constitutionally deficient for failing to inform him of his rights concerning the ill juror and failing to object to the substitution of the alternate juror.

The New Hampshire Supreme Court did not address the merits of Colbert's due process claim because he failed to make a timely objection when the issue first arose.  Colbert, 139 N.H. at 371.  New Hampshire has consistently applied its well-established rule that issues must be preserved by a timely objection.  See, e.g., State v. Ryan, 135 N.H. 587, 588 (1992).  Moreover, the New Hampshire Supreme Court has not recognized a plain error exception to its contemporaneous objection requirement.  State v. Nutter, 135 N.H. 162, 164 (1991).  Under these circumstances, a federal court cannot address the merits of a defaulted claim in a habeas corpus petition "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider

7

the claims will result in a fundamental miscarriage of justice.[5] Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Colbert has asserted ineffective assistance of counsel, based in part on his counsel's failure to object to the juror substitution. Constitutionally deficient representation, as described in Strickland v. Washington, 466 U.S. 668 (1984), may serve as cause for a procedural default. Coleman, 501 U.S. at 752; Burks v. Dubois, 55 F.3d 712, 716-17 (1st Cir. 1995). Even assuming, however, that Colbert could show that his counsel's trial performance fell below an objective standard of reasonable effectiveness, Strickland, 466 U.S. at 688-89, he would still have to demonstrate that he suffered actual prejudice, id.. As prejudice is also an essential element of the cause and prejudice standard, and is dispositive in that context, I choose to address the question of prejudice without first determining that Colbert has established cause for the default.

---

[5] Colbert invokes the plain error rule used by federal courts when considering procedurally defaulted claims on direct appeal. See Fed. R. Civ. P. 52(b); United States v. Olano, 507 U.S. 725 (1993). However, the plain error rule is not available in habeas corpus proceedings to overcome a procedural default in state court. Engle v. Issac, 456 U.S. 107, 134-35 (1982) ("burden of justifying federal habeas relief for state prisoners is greater than the showing required to establish plain error on direct appeal").

To establish prejudice, Colbert must show "'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Murray v. Carrier, 477 U.S. 478, 494 (1986) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). Therefore, Colbert must demonstrate that he did not receive a fair trial as a result of the substitution of the alternate juror.

The Third Circuit has recently noted that most federal courts that have considered the issue have held that juror substitution during deliberations does not cause an unfair trial if the court followed precautions to insure the impartiality and proper function of the reconstituted jury and if no actual prejudice is shown to have resulted from the substitution. Claudio v. Snyder, 68 F.3d 1573, 1575-77 (3d Cir. 1995) (collecting cases), cert. denied, 116 S.Ct. 1329 (1996). Important considerations are whether the substitute juror had a full opportunity to hear the evidence at trial, whether the court questioned the substitute about outside influences or bias, whether the court instructed the reconstituted jury to begin their deliberations anew, and the length of the jury's

9

deliberations before and after substitution. See, e.g., id.; United States v. McFarland, 34 F.3d 1508, 1514-15 (9th Cir. 1994), cert. denied, 115 S.Ct. 2257 (1995); United States v. Quiroz-Cortez, 960 F.2d 418, 420 (5th Cir. 1992); United States v. Phillips, 664 F.2d 971, 995-96 (5th Cir. 1981), cert. denied, 457 U.S. 1136 (1982).

In this case, the alternate jurors participated in the trial as fully as the other jurors, and they were sequestered when the jury began deliberations. After the ill juror was dismissed, the court questioned the alternates about their impartiality in the case, and finding no problems, chose one alternate at random to replace the dismissed juror. The court then appointed a new foreperson and instructed the reconstituted jury to start their deliberations again from the beginning. Thus, the court fully complied with the procedural precautions that were necessary to insure that the defendant received a fair trial.

Colbert nevertheless asserts that because the original jury deliberated for four hours without reaching a verdict, and the reconstituted jury deliberated for only two hours before reaching its verdict against him, "it is therefore clear that the error of admitting the alternate into an already deliberating jury affected the defendant's due process rights."

10

In <u>United States v. McFarland</u>, the jury deliberated for two and one half hours before informing the court that it was deadlocked.  34 F.3d 1508, 1510 (9th Cir. 1994).  The court then dismissed a juror, at the juror's request, substituted an alternate juror, and recessed deliberations for the four-day Thanksgiving holiday.  <u>Id.</u>  When the jurors returned on Monday, the court explained that the new jury would have to "go over some ground that you have previously plowed."  <u>Id.</u> at 1511.  The reconstituted jury began deliberations and reached a guilty verdict in less than two hours.  <u>Id.</u>  Despite the difference in outcome after the juror was substituted and the short time required for new deliberations, the Ninth Circuit concluded that the defendant had not shown actual prejudice.  <u>Id.</u> at 1515.  <u>Cf.</u> <u>United States v. Lamb</u>, 529 F.2d 1153 (9th Cir. 1975) (Ninth Circuit reversed conviction where jury's guilty verdict after four hours of deliberations refused by court for failure to comply with instructions and a new jury, with a juror replaced by an alternate, returned guilty verdict after only twenty-nine minutes of additional deliberations).

Like the Ninth Circuit in <u>McFarland</u>, I conclude that the defendant cannot prove actual prejudice merely by demonstrating that the jury deliberated for less time after an alternate is

11

substituted for a sitting juror. Despite the possibility for coercion or undue influence caused by or exerted on the new juror, see Quiroz-Cortez, 960 F.2d at 420, and the relatively short time of the new jury's deliberations, Colbert has not converted a theoretical possibility into a probability of actual prejudice in this case. The jurors were properly instructed, and jurors are presumed to have followed the court's instruction to begin again. McFarland, 34 F.3d at 1514 (citing Olano, 507 U.S. at 740). The record contains no evidence that any juror complained of improper influence or coercion, and the jury was individually polled and accepted the verdict. See United States v. Morris, 977 F.2d 677, 689 (1st Cir. 1992) ("A juror's acceptance of the verdict upon polling constitutes prima facie evidence of his/her participation in deliberations, lack of irregularity therein, and concurrence in the outcome."), cert. denied, 507 U.S. 988 (1993). Nor is this one of those relatively rare cases where prejudice can be conclusively presumed. See, e.g., Scarpa v. Dubois, 38 F.3d 1, 11-15 (1st Cir. 1994), cert. denied, 115 S.Ct. 940 (1995). Under these circumstances, and because Colbert has produced no other evidence of prejudice, I conclude that the juror substitution, and his counsel's failure to object, did not unfairly prejudice his case. Finally, Colbert

12

has not presented the extraordinary case in which a petitioner is unable to meet the cause and prejudice standard but, nevertheless, can demonstrate that a constitutional violation has caused a miscarriage of justice by allowing the conviction of one who is not guilty. See Murray, 477 U.S. at 496; Burks, 55 F.3d at 717.

Having failed to demonstrate actual prejudice, Colbert cannot overcome the procedural default. Nor can he succeed with his ineffective assistance of counsel claim. Accordingly, the respondent, Warden Cunningham, is entitled to summary judgment.


## CONCLUSION

For the foregoing reasons, the respondent's motion for summary judgment (document no. 9) is granted.

SO ORDERED.

                               _____
                               Paul Barbadoro
                               United States District Judge

July 29, 1996


cc:  Jonathan Saxe, Esq.
     Michael Ramsdell, Esq.