NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough - northern judicial district
No. 2012-644


THE STATE OF NEW HAMPSHIRE

v.

ADAM MUELLER

Argued: November 13, 2013
Opinion Issued: February 11, 2014


Joseph A. Foster, attorney general (Lisa L. Wolford, attorney, on the brief and orally), for the State.

Law Office of Brandon D. Ross, PLLC, of Manchester (Brandon D. Ross on the brief and orally), for the defendant.


LYNN, J. Following a jury trial, the defendant, Adam Mueller, was convicted of three counts of felony wiretapping. See RSA 570-A:2, I(a) (Supp. 2012). On appeal, he argues that the Superior Court (Brown, J.) committed plain error by instructing the jury that a violation of the felony wiretapping statute requires a mental state of "purposely," when the statute specifically

identifies "wilfully" as the applicable mental state.[1]  The State agrees that the trial court's instruction as to the requisite mens rea was erroneous, but asserts that reversal of the defendant's convictions is not warranted because the prerequisites for application of the plain error doctrine have not been met.  We reverse and remand.

The limited record reflects the following facts.  The defendant is the founder of Copblock.org (Copblock), a self-described police accountability website.  On October 4, 2011, the defendant called three individuals seeking comment on an incident that occurred at West High School in Manchester involving a student and a police officer.  The individuals contacted by the defendant were Captain Jonathan Hopkins of the Manchester Police Department; Mary Ellen McGorry, Principal of West High School; and Denise Michael, assistant to Principal McGorry.  The defendant videotaped himself making the telephone calls, recorded the calls, and posted the recordings on Copblock.  The defendant did not ask any of the individuals for their permission to record the conversations, nor did he advise them that he was doing so.  A few months later, while speaking on a local radio show, the defendant commented that he did not tell Captain Hopkins, Principal McGorry, or Ms. Michael that he recorded their conversations, prompting the Manchester Police Department to investigate the matter further.

The defendant was charged with three counts of felony wiretapping, with each count alleging that he had "purposely" recorded a telephone conversation without the consent of all the participants.  After a one-day trial, at which the defendant represented himself and did not testify, the jury found the defendant guilty of each charge.

The defendant argues that the trial court erred by instructing the jury that a violation of the felony wiretapping statute requires a mental state of "purposely," when the statute specifically states:  "A person is guilty of a class B felony if . . . without the consent of all parties to the communication, the person . . . [w]ilfully intercepts . . . any telecommunication or oral communication."  RSA 570-A:2, I(a) (emphasis added).  Because the defendant did not object at trial to the court's definition of the crimes as requiring a purposeful mens rea, he raises the issue on appeal as plain error.  "The plain error rule allows us to exercise our discretion to correct errors not raised before the trial court."  State v. Moussa, 164 N.H. 108, 118 (2012) (quotation omitted); Sup. Ct. R. 16-A ("A plain error that affects substantial rights may be considered even though it was not brought to the attention of the trial court or the supreme court.").

---

[1] In his brief, the defendant also argued that, because he was a party to the conversations which formed the basis of the charges against him, his conduct constituted, at most, misdemeanor level offenses proscribed by RSA 570-A:2, I-a (Supp. 2013).  However, at oral argument, the defendant explicitly abandoned this argument.  We therefore do not address it.

> For us to find plain error: (1) there must be error; (2) the error must be plain; and (3) the error must affect substantial rights. . . . If all three of these conditions are met, we may then exercise our discretion to correct a forfeited error only if the error meets a fourth criterion: the error must seriously affect the fairness, integrity or public reputation of judicial proceedings. This rule is used sparingly, however, and is limited to those circumstances in which a miscarriage of justice would otherwise result.

Moussa, 164 N.H. at 118 (quotation omitted).

The State concedes that the first two prongs of the plain error test are met in this case, i.e., that the trial court erred, and that the error was plain. We agree. "The purpose of the trial court's charge is to state and explain to the jury, in clear and intelligible language, the rules of law applicable to the case." State v. O'Leary, 153 N.H. 710, 712 (2006). When reviewing jury instructions, "we evaluate allegations of error by interpreting the disputed instructions in their entirety, as a reasonable juror would have understood them, and in light of all the evidence in the case." State v. Prudent, 161 N.H. 320, 324 (2010) (citation omitted).

Although under RSA 626:2, IV (2007) a requirement that an offense be committed "wilfully" is generally satisfied if the defendant "acts knowingly with respect to the material elements of the offense," this statute merely establishes a default rule that is subject to exceptions where "a purpose to impose further requirements appears" in the statute defining the crime. See Fischer v. Hooper, 143 N.H. 585, 588 (1999). Our decision in Fischer clearly established that the default definition of wilfully — that it is the equivalent of knowingly — is not the mens rea that applies to violations of RSA 570-A:2, I. Id. at 588-89. In Fischer, we were required to determine what the legislature meant when it specified "wilfully" as the mental state for the felony wiretapping offense, see RSA 570-A:2, I, given that the legislature had imposed a "knowing" mental state for the misdemeanor wiretapping offense, see RSA 570-A:2, I-a. Fischer, 143 N.H. at 588. Because it had "used two different words to describe the mens rea for felony and misdemeanor conduct," we concluded that the legislature could not have intended the same mental state to apply to both offenses. Id. Accordingly, we held "that the legislature did not intend to impose a mens rea of 'knowingly' in RSA 570-A:2, I." Id. Instead, noting that RSA chapter 570-A closely tracks the pre-1986 version of the federal wiretap statute, 18 U.S.C.§ 2511(1), we followed Citron v. Citron, 722 F.2d 14 (2d Cir. 1983), the leading federal case, in concluding that:

> "wilfully" in RSA 570-A:2, I, means that the defendant must act with an intentional or reckless disregard for the lawfulness of his

3

conduct. In other words, the defendant has not violated RSA 570-A:2, I, if he has "a 'good faith' belief that [his] conduct was lawful."

Fischer, 143 N.H. at 589 (alteration in original) (citation omitted); see also Karch v. Baybank FSB, 147 N.H. 525, 532 (2002).

Here, the erroneous mental state of purposely merely required the State to show that the defendant had the "conscious object" to record the conversations without the consent of all the parties. See RSA 626:2, II(a) (2007). However, it did not require the State to prove that the defendant was either aware of or recklessly ignorant of the fact that recording the conversations without consent was against the law, the very proof that was required in order to establish that he acted wilfully.[2] In light of the applicable definition of wilfully, then, the trial court erred by instructing the jury that "purposely," rather than "wilfully," was the proper mental state required to establish a violation of RSA 570-A:2, I(a). The error also was plain, as it was "clear" and "obvious" that the trial court instructed the jury on the incorrect mental state. See State v. Guay, 162 N.H. 375, 384 (2011) ("Plain is synonymous with clear or, equivalently, obvious." (quotation omitted)).

We next consider whether, under the third prong of the plain error test, the trial court's error affected the defendant's substantial rights. "Generally, to satisfy the burden of demonstrating that an error affected substantial rights, the defendant must demonstrate that the error was prejudicial, i.e., that it affected the outcome of the proceeding." State v. Lopez, 156 N.H. 416, 425 (2007). The third prong of the plain error test is similar to the harmless error analysis we use to evaluate preserved claims of error, with one important distinction: whereas the State bears the burden under harmless error analysis, the defendant bears the burden under the plain error test. See United States v. Gamory, 635 F.3d 480, 494 (11th Cir. 2011). We will find prejudice under the third prong when we cannot confidently state that the jury would have returned the same verdict in the absence of the error. See id. (finding that the defendant did not show prejudice under the third prong when the court was "able to conclude with fair assurance . . . that the judgment was not substantially swayed by the error" (quotation omitted)).

The defendant argues that the error was prejudicial because the improper jury instruction lessened the State's burden of proof regarding the applicable mental state, thus allowing the jury to convict him based simply upon its finding that he specifically intended to record the conversations

---

[2] Significantly, our construction of wilfully as requiring an intentional or reckless disregard for the lawfulness of one's conduct represents a departure from the usual rule that ignorance of the law is not an excuse for criminal conduct. See State v. Stratton, 132 N.H. 451, 457 (1989) ("It is elementary, as well as indispensable to the orderly administration of justice, that every man is presumed to know the laws of the country in which he dwells." (quotation omitted)).

4

without consent, without properly considering whether he knew or was recklessly ignorant of the fact that his actions were unlawful. The State responds that the evidence would have permitted the jury to infer that the defendant did know that the recordings were unlawful and, therefore, that the erroneous instruction as to the required mens rea did not affect the outcome of the trial. We find the State's argument unconvincing.

To support its position, the State primarily relies upon statements made by the defendant during his opening and closing remarks to the jury and on the testimony of Captain Hopkins. In his opening statement, the defendant encouraged the jury to determine its verdict based not upon the trial court's instructions, but rather upon what it thought was "right." In his closing argument, the defendant told the jury, "I haven't denied the fact that I did not tell these people that I was filming them. I'll say that again: I did not tell them that I was filming them." The defendant went on to state:

> I know [the prosecutor] would like you to believe that I'm asking you to allow me to break the law, but that's just not true. I'm asking you to decide if this law applies to public officials or to use jury nullification . . . . We should not have to tell public officials we're recording them, because everything a public official does is public information, plain and simple. And that's why I feel I'm not guilty of these charges.

Even if we put aside the fact that opening and closing remarks are not evidence — a point which the trial court made clear to the jury in its final instructions — we do not believe that these statements were tantamount to a confession by the defendant that he knew that his conduct was illegal. The State generally claims that the defendant's reference to jury nullification in both statements showed that he knew that his conduct violated the law and, thus, that he acted wilfully. However, the State takes the jury nullification argument out of context. During its opening statement, the State specifically told the jury that the mental state for the felony wiretapping statute was "purposely." When the defendant then urged the jury not to follow the law and instead to consider jury nullification — because public officials should not have to be told they are being recorded — he was not necessarily saying that he knew it was against the law to record conversations with such officials without their consent. Rather, he might well have been saying that even though it was his conscious object to record the conversations without consent, the jury should find that this conduct was not unlawful because the law should not apply to conversations with public officials. Simply put, when considered in context, the defendant's jury nullification argument is not singularly susceptible to the inference that he admitted to knowing that his conduct was unlawful, and therefore that he acted wilfully.

5

The State's reliance upon Hopkins's testimony also is unavailing. During cross-examination by the defendant, Hopkins testified that he had been recorded by Copblock members in the past, and had been told that he was being recorded. The State argues that the jury could have inferred from this testimony that the defendant knew it was unlawful to record conversations without consent, as other members of Copblock had sometimes notified Hopkins that they were recording him. However, the State did not further develop Hopkins's statement on redirect examination, nor did it present any other evidence to link Hopkins's past experience with Copblock members to the defendant. For example, there was no evidence about how many times Hopkins had been recorded by Copblock members, whether he was <u>always</u> told by other Copblock members when he was being recorded, or what the defendant's relationship was with other Copblock members. We think it doubtful that the jury reasonably could have inferred the <u>defendant's</u> willful mental state based upon Hopkins's limited testimony regarding his past experience with other Copblock members.

The State also argues more generally that, based upon the defendant's status as a founder of Copblock and his work with that organization, the jury could have inferred that he was familiar with wiretap law and thus knew that it was unlawful to record conversations without consent. However, because the State did not consider the defendant's knowledge regarding the lawfulness of his conduct to be at issue during the trial, the record contains minimal evidence detailing the defendant's activities or experience with Copblock.

Finally, the State points to the fact that the defendant did not defend against the charges based upon the claim that he acted with the good faith belief that his conduct was lawful. The State argues, in essence, that the absence of such a defense would have permitted the jury to infer that the defendant was aware that his conduct was unlawful. We are aware of no authority supporting the proposition that a jury may properly infer guilt based upon a defendant's failure to present a defense that would have been immaterial to the question of guilt or innocence under the theory on which the State proceeded — here, that it need only show the defendant acted purposely.

To summarize, although the evidence was overwhelming that it was the defendant's conscious object to record the conversations without the consent of all parties, there was minimal evidence concerning whether the defendant knew or was recklessly ignorant of the fact that his conduct was unlawful. In this regard, this case is distinguishable from <u>State v. Ortiz</u>, 162 N.H. 585 (2011). In that case, the defendant argued that the trial court committed plain error by instructing the jury that the <u>mens</u> <u>rea</u> for the FSA charge was "knowingly" instead of "purposely." <u>Id</u>. at 591. We held that the plain error test was not satisfied, despite the instruction on the incorrect mental state, as "the evidence that the defendant acted purposely was overwhelming and

6

essentially uncontroverted." Id. at 592. Here, unlike in Ortiz, the evidence of the correct wilful mental state was not overwhelming and essentially uncontroverted. Thus, we cannot state with confidence that the jury would have found the defendant guilty if it had been properly instructed to decide whether the defendant "wilfully" recorded the conversations without consent. Accordingly, we find the third prong of the plain error test satisfied, as the erroneous instruction likely affected the outcome of the proceedings.

We next consider whether the fourth prong has been satisfied. Under the fourth prong, we must decide whether the trial court's error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Moussa, 164 N.H. at 118. We limit our exercise of discretion under the fourth prong to "those circumstances in which a miscarriage of justice would otherwise result." Id. In State v. Russell, we declined to exercise our discretion under the fourth prong of the plain error rule because there was "overwhelming and essentially uncontroverted evidence" of the defendant's guilt. State v. Russell, 159 N.H. 475, 492 (2009). As demonstrated above, the evidence of the defendant's wilful mental state at the time he recorded the conversations was far from overwhelming. Thus, there is the very real prospect that the jury would have returned different verdicts had it been properly instructed. Cf. United States v. Paul, 37 F.3d 496, 500 (9th Cir. 1994) (finding the plain error test satisfied where the district court improperly instructed the jury on the different mental state requirements of voluntary and involuntary manslaughter, for in doing so the district court "created a substantial risk that [the defendant] was convicted of voluntary manslaughter, even though the jury may have believed the killing was neither intentional nor extremely reckless"). To allow the convictions to stand under these circumstances "would seriously affect the fairness and integrity of judicial proceedings." Guay, 162 N.H. at 384. Accordingly, we reverse the convictions and remand for a new trial.

Reversed and remanded.

DALIANIS, C.J., and HICKS, CONBOY and BASSETT, JJ., concurred.

7