# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2015-0162, <u>State of New Hampshire v. Justin Cassidy</u>, the court on March 18, 2016, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

Following a jury trial in Superior Court (<u>Abramson</u>, J.), the defendant, Justin Cassidy, was convicted on a charge of acting in concert with another in the sale of a controlled drug. <u>See</u> RSA 318-B:2, :26 (Supp. 2015). He argues that the evidence was insufficient to sustain his conviction, and that the trial court erred by not assuring that the jurors would begin deliberations anew after substituting an alternate juror during jury deliberations.

We first address whether the evidence was sufficient to sustain the defendant's conviction. The indictment on which the defendant was convicted alleged that on or about May 20, 2014, "in concert with Taylor Bacon, . . . [he] did knowingly sell a quantity of a controlled drug, to wit, heroin, in a quantity of less than one gram, including any adulterants or dilutants, to an [informant], in exchange for United States Currency." On appeal, the defendant argues that this language charged him with being an accomplice to a drug sale. He further argues that the evidence established only that he sold heroin to Ms. Bacon, who in turn sold it to the informant; there was no evidence, according to the defendant, that he knew the heroin he sold to Ms. Bacon would be distributed to anyone else. Thus, he argues that the evidence was legally insufficient to establish "that he knowingly 'solicited, aided or attempted to aid another' to sell drugs" so as to give rise to accomplice liability. We assume, without deciding, that this argument is preserved.

The defendant's argument is built upon the faulty premise that he was charged solely as an accomplice. Under New Hampshire law, however, language in a charging document alleging that a defendant acted "in concert with" another ordinarily charges the defendant <u>both</u> as a principal and as an accomplice. <u>State v. Brooks</u>, 164 N.H. 272, 289 (2012); <u>State v. Sinbandith</u>, 143 N.H. 579, 584 (1999) (finding that language in an indictment charging the defendant with knowingly selling a controlled drug "in concert with and aided by another" provided sufficient notice that the defendant was being charged as

a principal).  Moreover, the identity of the purchaser of a drug is not an element of the crime of sale of a controlled drug under RSA 318-B:2.  See State v. Bell, 125 N.H. 425, 429 (1984).

Consistent with these principles, the trial court instructed the jury in this case, without objection, as follows:

> Now in this case the Defendant has been charged with sale of a controlled drug, acting in concert with Taylor Bacon.  The definition of this crime has four parts or elements.  The State must prove each element beyond a reasonable doubt.  Understand the State is not required to prove beyond a reasonable doubt each and every fact upon which it relies.  The State is required to prove beyond a reasonable doubt the four elements of the crime.  Thus, the State must prove:

> First, the Defendant sold a substance to another;

> And, second, the Defendant knew the substance was heroin;

> And, third, the amount of the controlled drug was less than one gram, including any adulterants or diluents;

> And, fourth, the Defendant acted knowingly.

> . . . .

> Now as a matter of law, the Defendant is charged here as both a principal and an accomplice in sale of a controlled drug.  A defendant may be convicted of a crime although he did not personally perform all of the conduct which constitutes the offense.  In other words, the law recognizes that there may be a division of labor in criminal activity, just as there is in business or many other activities of daily life.

> Thus, if you find the crime of sale of a controlled drug occurred, then the State may prove the Defendant's guilt of that crime in either one of two ways.  First, by proving beyond a reasonable doubt that the offense was committed by the Defendant himself as described above; or, second, by proving beyond a reasonable doubt that the Defendant is accountable for the conduct of someone else, namely, Taylor Bacon, and that the offense was committed by a combination of the Defendant's own acts and the actions of Taylor Bacon.

2

(Emphases added.)  Thus, the trial court properly instructed the jury that it could convict the defendant if it found that he knowingly sold less than one gram of a substance he knew to be heroin to another.  The jury was not required to find in addition that he knew the heroin would be distributed to the informant.  See id. at 430 (because identity of purchaser is not an element, it made no difference that the person to whom the defendant sold drugs was not the state trooper named in the indictment, but was an informant).  In his brief, the defendant acknowledges that "[t]he State's evidence is that Ms. Bacon said she bought a baggie of heroin from [the defendant], and in turn sold it to [the informant]. . . .  The amount of drugs Ms. Bacon bought and sold was 0.843 grams – roughly the amount of her daily habit."

We conclude, therefore, that the evidence was sufficient to sustain the defendant's conviction.

We next address whether the trial court erred by not assuring that the jurors would begin deliberations anew after substituting an alternate juror during jury deliberations.  After the trial court was required to substitute an alternate juror for a juror who had become ill, the trial court specifically instructed the jurors to "start [their deliberations] all over again," to share with the new juror their positions and viewpoints as to the evidence and the law, to listen to the new juror's positions and viewpoints, and not to consider or refer to any viewpoints that may have previously been expressed by the excused juror.  The defendant argues that these instructions were not sufficient to assure that the jurors would in fact begin deliberations anew; rather, the defendant argues that the trial judge was obligated to ask each juror individually whether the juror could begin deliberations anew, and to obtain each juror's affirmative statement on the record that the juror would begin deliberations anew.  See State v. Sullivan, 157 N.H. 124, 142-43 (2008).

The record does not reflect that the defendant raised this issue in the trial court.  To the contrary, it shows that, after the trial court instructed the jurors to begin their deliberations anew, it asked counsel whether there was "anything else [to address] before the jury's excused," to which the defendant's counsel responded, "No, Your Honor."  However, the defendant asserts that "if it appears [that he] did not contemporaneously object to the trial judge's abbreviated procedure, this Court should nonetheless reverse for plain error."

Under the plain error rule, we have discretion to correct errors that were not raised in the trial court.  State v. Mueller, 166 N.H. 65, 68 (2014).  The rule "is used sparingly, however, and is limited to those circumstances in which a miscarriage of justice would otherwise result."  Id. (quotation omitted).  Among other requirements, for there to be plain error, the error at issue must affect substantial rights.  Id.  That is, it must affect the outcome of the case.  Id. at 70.  This analysis "is similar to the harmless error analysis we use to evaluate

3

preserved claims of error, with one important distinction: whereas the State bears the burden under harmless error analysis, the defendant bears the burden under the plain error test." Id.

In this case, the State concedes that the trial court erred under Sullivan. It argues, however, that the error did not affect the defendant's substantial rights. In his brief, the defendant does not address how the error affected substantial rights, but asserts instead that because "the trial judge's oversight is structural error 'not subject to harmless error analysis,'" he does not have to prove that it affected his substantial rights.

A "structural error" is a constitutional error that necessarily renders a criminal trial so fundamentally unfair that it "cannot reliably serve its function as a vehicle for the determination of guilt or innocence." State v. Addison (Capital Murder), 165 N.H. 381, 452 (2013) (quotation omitted). Such an error requires reversal of the defendant's conviction without regard to whether the error was prejudicial. See id.

We have never addressed whether a trial judge's failure to individually question jurors to assure that the jurors begin deliberations anew constitutes a constitutional "structural error." State v. Dushame, 136 N.H. 309 (1992), relied upon by the defendant to argue that the error here was structural, solely concerned the application of RSA 500-A:13 (1983). We concluded that the statute, as it was then written, required the discharge of any alternate jurors upon submission of a case to the jury. Dushame, 136 N.H. at 314-15. We did not address any constitutional requirements for substituting a juror during deliberations, or whether the failure to follow those requirements constitutes structural error.

Although we did not require the defendant in Dushame to establish prejudice because the statute's effect was to render his jury a jury of eleven persons contrary to the State Constitution, we then expressly declined to consider "the constitutional implications of late substitution" of jurors. Id. In State v. Colbert, 139 N.H. 367, 371 (1995), we noted that these two statements in Dushame are at variance, and concluded that, to the extent Dushame suggests that substituting a juror during jury deliberations violates the State Constitution, it is dicta. Thus, we specifically rejected the dissent's argument that a trial court's post-deliberation substitution of a juror in violation of RSA 500-A:13 (1983) is a "structural jury problem" for which a defendant is not required to object. Id.; see also id. at 374-75 (Horton, J., dissenting). Moreover, we rejected the defendant's argument that his counsel's failure to object to the substitution of a juror during jury deliberations was presumptively prejudicial for purposes of ineffective assistance of counsel, and rejected his ineffective assistance of counsel claim because he had not shown actual prejudice. Id. at 372-73. Contrary to the defendant's argument,

4

therefore, Dushame does not stand for the proposition that "[s]ubstitution of a juror after commencement of deliberations is structural error"; it merely stands for the proposition that such juror substitution violated the version of RSA 500-A:13 then in effect.

In response to Dushame, the legislature amended RSA 500-A:13 to allow for the substitution of a juror after the commencement of deliberations. See Colbert, 139 N.H. at 371; RSA 500-A:13 (2010) (amended 2013). In Opinion of the Justices (Alternate Jurors), 137 N.H. 100, 103-05 (1993), we concluded that the substitution of a juror after the commencement of jury deliberations is consistent with a defendant's state constitutional right to a trial by jury so long as certain procedural requirements are followed. In Sullivan, we held that the trial court violated the defendant's constitutional right to be tried by a fair and impartial jury by discharging a juror during deliberations, contrary to Opinion of the Justices, for a non-meritorious reason. Sullivan, 157 N.H. at 132-41. We also concluded that, after improperly dismissing the juror, the trial court further violated the defendant's right to a fair and impartial jury by not securing assurances from each remaining juror that the juror could and would begin deliberations anew. Sullivan, 157 N.H. at 141-43. We characterized the latter error as "further grounds for reversal." Id. at 141. However, we did not address whether any of the errors in Sullivan was "structural."

More recently, in Addison, 165 N.H. at 443-52, we addressed whether the trial court violated the defendant's right to a fair and impartial jury by denying his pretrial motions to strike certain potential jurors for cause. We concluded that, because the defendant had exercised peremptory challenges with respect to those jurors, and because he did not contend that any of the jurors who sat on his jury was biased, he could not establish that errors in denying his for cause challenges prejudiced him. Id. at 449-52. In so ruling, we specifically determined that errors in jury selection are not "structural" errors, and warrant reversal only upon a showing of prejudice. Id. at 452.

Although Addison concerned the pretrial denial of for cause challenges to potential jurors, we see no qualitative difference between that kind of error and the kind of error at issue in this case for the purpose of assessing whether the trial was rendered so fundamentally unfair that it "cannot reliably serve its function as a vehicle for the determination of guilt or innocence." Id. (quotation omitted). Accordingly, we conclude that a failure to individually question jurors to assure that the jurors begin deliberations anew after substituting an alternate juror during deliberations is not a "structural error," but is instead subject to harmless error analysis. Id.

Here, the defendant has not shown how the trial court's failure to question the jurors regarding their ability to begin deliberations anew affected the outcome of the case. We presume that the jurors followed the trial court's

5

instructions to begin their deliberations anew.  See State v. Tyler, 158 N.H. 776, 779 (2009).  Indeed, the record reflects that the jury deliberated for nearly five hours before reaching a unanimous verdict on one charge and deadlocking on two other charges.  We conclude that the defendant has not established that any error in the trial court's failure to individually question the jurors to assure that they would begin their deliberations anew affected his substantial rights. Mueller, 166 N.H. at 70.

Affirmed.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,**
**Clerk**