UNITED STATES of America,
Plaintiff, Appellee,

v.

Harry C. PAPPAS, Defendant, Appellant.

No. 80–1092.

United States Court of Appeals,
First Circuit.

Argued Nov. 3, 1980.

Decided Dec. 17, 1980.

Certiorari Denied April 20, 1981.
See 101 S.Ct. 1988.

John Wall, Boston, Mass., with whom Harry C. Mezer, and Cullen & Wall, Boston, Mass., were on brief, for defendant, appellant.

William H. Shaheen, U. S. Atty., Concord, N. H., for plaintiff, appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, HOFFMAN, Senior District Judge.*

COFFIN, Chief Judge.

Harry C. Pappas was convicted after a jury trial on four counts of wilful failure to file income tax returns. He now seeks a new trial, claiming that the trial court erred by excluding his and his attorney's participation in part of the jury selection process; by refusing to allow one of his *voir dire* questions; by excusing a juror for cause; by making various evidentiary rulings; by refusing to grant a mistrial; and by permitting the prosecutor to make improper arguments to the jury. We affirm the conviction.

* Of the Eastern District of Virginia, sitting by designation.

Pappas was charged with violation of 26 U.S.C. § 7203 [1] four times for the years 1972 through 1975. The parties stipulated at trial that he filed returns for the years 1966 through 1971 and "failed to file . . . returns . . . for the years 1972" through 1975. Pappas defended on the ground that his failure to file was not wilful, since he was plagued by a learning disability, a psychiatric disorder, and "tremendous accounting inadequacies." The jury found against him on all four counts.

## I.

Pappas attacks the trial court's conduct of jury selection on three grounds.

### A.

The trial court followed an unusual procedure in selecting the jury. It read 26 questions suggested by counsel to the venire concerning their previous knowledge of, connection with, or bias about the Pappas case and related matters. It then instructed prospective jurors who would answer affirmatively to any of the questions to approach the bench. Over defense objection elaborated in a bench conference the judge excluded from this conference both the court reporter and the respective attorneys, apparently on the rationale that such a confidential talk would elicit more candid replies from the prospective jurors. After conversing with 25 of the venire, the judge recounted his discussion with each to the lawyers and told them "[w]hoever you want excused for cause, I'll give it to you." Pappas's or the government attorney asked that 23 of these 25 prospective jurors be excused for cause. The two remaining were returned to the jury pool. After this preliminary screen of the juror pool, the court then drew 22 names, and asked that candidates as called announce their name, address, and the occupation of both spouses. After com-

pletion of this process, the court stated "the Court finds the panel qualified. Counsel may examine." The attorneys for both sides then approached the bench, with the reporter. Pappas's counsel asked that two of the 22 be replaced, one for cause and one peremptorily. The court granted these requests. The court also granted the prosecutor's request that another juror be replaced for cause. The court then selected a jury of twelve plus two alternates from this pool of 22. One juror—number 59—who had an affirmative answer to the court's original questioning was chosen for the jury. At no time did Pappas's counsel pose or seek to have posed additional questions to any of the candidate jurors. At no time did the court discourage such a procedure. And at no time did Pappas's attorney object to the seating of juror number 59.

Pappas now argues that the court's refusal to permit either his lawyers or the court reporter to attend the sidebar exchange with the jurors violated his due process and jury trial rights, as guaranteed by the Fifth and Sixth Amendments, and that exclusion of the court reporter violated 28 U.S.C. § 753(b) (requiring that proceedings in open court be recorded). At oral argument he claimed the jury selection both burdened him with jurors he did not want [2] and forced him to challenge jurors that he might not have had he seen and heard their oral replies to the court's questions.

■ We view this procedure with disfavor. Intonation, visceral reactions, and nonverbal signals are important to a vigilant attorney's participation in jury selection. These are lost when counsel is barred from hearing the comments of candidate jurors. The only rationale offered for the exclusion—promoting candid replies—is too weak to justify this potentially serious incursion on the defendant's trial rights.

1. "§ 7203. Willful failure to file return, supply information, or pay tax

　　Any person required . . . to pay any . . . tax, or required . . . to make a return . . . who willfully fails to pay such . . . tax [or] make such return, . . . shall . . . be guilty of a misdemeanor and, upon conviction thereof,

shall be fined not more than $10,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution."

2. This argument was not pressed in Pappas's brief, since there he claimed that "[n]either of the [two] remaining identified jurors was chosen."

This rationale is weaker still when offered as the reason for preventing a silent and inconspicuous court reporter from recording the interchange. District courts should avoid this procedure, as we are told at oral argument this particular district court now does.

We believe, however, that this practice could not have caused any prejudice in the case before us. Although the court's first screening procedure was secretive, Pappas's counsel requested or acquiesced after objection in the excusal of 23 of the candidates without asking for any further questioning. Counsel also had subsequent opportunities to examine the members of the jury pool when the court drew 22 names and asked each in turn to state name, address and occupation. The transcript reveals that Pappas's attorney did avail himself of this questioning opportunity. At the close of this process, the court announced that it found the panel qualified and that "[c]ounsel may examine." Again Pappas's lawyer did not ask for further questioning, but instead directly asked that another two candidates be replaced. The court complied.

Neither was Pappas inhibited by a limited number of available challenges. The court stated that Pappas had three peremptory challenges, and "[w]hoever you want excused for cause, I'll give it to you." Pappas was granted liberal use of challenges for cause, and found it necessary to use only one of his peremptory challenges.

Our study of the transcript reveals a trial court that had adopted a peculiar screening procedure, but one that was accommodating in satisfying both sides' search for an impartial jury. After the judge completed his confidential interchanges, Pappas and his lawyer had the opportunity to observe and have further questions put to the prospective jurors. Pappas chose to make only limited use of these opportunities. We take this as a sign of his belief that his need for added jury information was not pressing. On the present record, we think that the district court's procedure—in retrospect a practice with a troublesome potential—produced what Pappas at trial thought was adequate enlightenment. We therefore decline to find that it in fact has fatally polluted that trial on the basis of jury information that Pappas began to miss only after the verdict. *United States v. Weiner*, 578 F.2d 757, 789 (9th Cir. 1978) (per curiam) ("Although we believe that the better procedure is to report everything said in the courtroom, a reversal [in a strikingly similar setting] is not necessary."), *cert. denied*, 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978). *Cf. United States v. Alessandrello*, 2654, 637 F.2d 131, 144 (3d Cir. 1980) (physical exclusion of defendants but not attorneys from a limited portion of jury selection is harmless error where defendant/attorney consultation was not curtailed and where defendants "were able to gather the information upon which peremptory challenges have traditionally been based").

### B.

Pappas also asserts that the trial court erred in excusing juror number 45 for cause, as occurred in the following manner:

"THE COURT: No. 45, John Groleau of Laconia. His cousin used to be Chief of the Loudon Police. That is the next department over as you go out of Concord. He has an account in the Indian Head Bank in Laconia. He is a Born Again Christian. He asked me to excuse him because he cannot serve in the judgment of his fellow man. What is your judgment?

MR. WALL: May I consult with my client?

PROSECUTOR: We want him off.

. . . . .

MR. WALL: No. 45, we object to his being excused for cause, Your Honor. He ought to do his duty.

PROSECUTOR: We want him excused for cause.

THE COURT: I will grant the government's request. The defendant's objection is noted."

■ Pappas argues that his action by the court violated 28 U.S.C. § 1862[3] and, together with his exclusion from the judge's questions as discussed above, denied Pappas "the opportunity to suggest more probing inquiry of this juror." Pappas does not question the authority of *United States v. Lawrence*, 618 F.2d 986, 987 (2d Cir. 1980), cited by the government to support the court's action. But he argues that the juror there said that "because of religious scruples, she would not be able to pronounce judgment on another individual." *Id.* This he apparently contrasts with the present case, where the juror said he could not "serve in the judgment of his fellow man" because of religious belief.

The trial court acted correctly. Several legitimate grounds supported the prosecutor's objection for cause; neither the court nor the prosecutor singled out religion as the sole basis for their actions. In any event, Pappas was not prevented from suggesting "more probing inquiry of this juror". Rather he apparently was satisfied with the information at hand, and had no suggestions for further inquiry that he deemed worthy of pursuit. And we do not perceive a logical foundation for distinguishing what Pappas apparently concedes to be the legitimate authority of *Lawrence*.

3. "No citizen shall be excluded from service as a . . . petit juror . . . on account of . . . religion . . . ."

4. "Do you . . . know anyone employed by or associated with any of the following entities: Internal Revenue Service of the United States, State of New Hampshire, United States Government . . . .?

Are you . . . acquainted with any police officer, member of any law enforcement agency, [or] Internal Revenue Service . . . .?

Do you know or have you in the past ever worked for the courts, the office of the United States Attorney, State Attorney General, the District Attorney or County Solicitor or for any law enforcement agency?

Do you have any relatives or friends who now work for or worked for any of these entities?

     •     •     •     •     •

Do you know of any reason why you may be prejudiced for or against the government or the defendant because of the nature of the charges or otherwise?

C.

Pappas requested that prospective jurors be asked whether they would give added credence to the testimony of a government employee. The court flatly refused to do so, although it had posed several more general questions that might be thought to encompass this more specific request.[4] Pappas argues this refusal was reversible error, citing several cases culminating in the recent decision of *United States v. Baldwin*, 607 F.2d 1295 (9th Cir. 1979). *Baldwin* summarizes the law in the following terms:

" '[W]hen important testimony is anticipated from certain categories of witnesses, whose official or semi-official status is such that a juror might reasonably be . . . inclined to credit their testimony, a query as to whether a juror would have such an inclination should be given if requested.' [quoting *Brown v. United States*, 338 F.2d 543, 545 (D.C.Cir.1964) (Burger, J.)]

     •     •     •     •     •

All circuits appear to be in agreement that the refusal to ask the question of whether the prospective jurors would be unduly influenced by the testimony of a

     •     •     •     •     •

If you were the United States Attorneys charged with the responsibility for the prosecution of this case, or if you were the defendant who is on trial here today charged with the offenses, or his attorneys, do you know of any reason why you would not be content to have your case tried by someone in your frame of mind?

If you are selected to sit as a juror on this case, will you be unable or unwilling to render a verdict solely on the evidence presented at the trial and the law as given to you in the instructions of the Court, disregarding any other ideas, notions or beliefs about the law you may have encountered in reaching your verdict?

Can you think of any other matter which you should call to the Court's attention which may have some bearing on your qualifications as a juror or which may prevent your rendering a fair and impartial verdict based solely upon the evidence presented at trial and the instructions on the law as given to you by the Court?"

law enforcement officer does not always constitute reversible error; that question hinges upon such factors as the importance of the government agent's testimony to the case as a whole; the extent to which the question concerning the venire person's attitude toward government agents is covered in other questions on voir dire and on the charge to the jury; the extent to which the credibility of the government agent-witness is put into issue; and the extent to which the testimony of the government agent is corroborated by non-agent witnesses." 607 F.2d at 1297–98.

■ We agree that the trial court erred in refusing to ask whether any of the venire would give added credence to testimony by government employees. The court read to the venire a list of "witnesses likely to be called". On this list were the Registrar of Deeds in Chesire County, the Custodian of Records for New Hampshire, and three individuals employed by the Internal Revenue Service. The testimony of the three IRS employees at minimum should have appeared to be "important" in this tax prosecution, at least until the court might obtain an indication to the contrary.

This testimony, while potentially important, in fact did not prove to be key. The government essentially sought to illustrate Pappas's wilful mind by recounting his capacity to undertake a number of business enterprises and activities during the period in question. Pappas defended by attempting to evidence his psychiatric impairments, overactive personality, and financially confused lifestyle. Against this setting, the testimony of the Registrar of Deeds and the Custodian of Records was incidental; it only verified undisputed financial and property transactions. Of the two IRS employees who actually testified, agent LaRose's testimony was not primarily concerned with either Pappas's enterprises or his defenses of impairment and confusion, although some inferences regarding these matters could be drawn from his testimony. Agent Halpin's testimony was more controversial, since the court accepted it as relevant to show that Pappas "had enough acumen to engage in a transaction . . . ." And Pappas did seek to place Halpin's credibility and expertise into issue. But Halpin was only one of 16 government witnesses, and we cannot say that his testimony was pivotal in the government's case. Neither has Pappas pointed us to any instance in which Halpin's testimony was matched against that of a non-government employee in a way that might have been possibly prejudicial to Pappas. When we take this together with the fact that the court's questions on *voir dire* did relate to the refused query, *see* note 4 *supra*, and that Pappas did not raise the credibility issue when suggesting jury instructions,[5] we are satisfied that the court's error was harmless.

[Parts II and III are excluded from publication.]

*Affirmed.*

---

5. The court instructed the jury that
"[i]t is for you as jurors alone to judge the credibility of the witnesses, that is, whether you believe all, part or none of their testimony as presented to you . . . . In considering the testimony of any witness, you may take into consideration the demeanor and appearance of the witness on the stand, how the witness answered the questions propounded, his or her knowledge of the facts and the interest of the witness, if any, in the final outcome of the case. You may also consider any demonstrated bias, prejudice of hostility of a witness toward either the government or the defendant in determining the weight to be accorded to the testimony of that witness . . . . [T]he same test is applied to expert witnesses . . . ."
In response to the court's question, Pappas's lawyer asked that three additional and unrelated instructions be given. He added that "[o]ther than those requests, Your Honor, I'm satisfied with your charge to the jury."