Hillsborough
No. 90-273

THE STATE OF NEW HAMPSHIRE

v.

MICHAEL BRODOWSKI

December 31, 1991

*John P. Arnold*, attorney general (*Paul A. Maggiotto*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J.   The defendant, Michael Brodowski, appearing *pro se*, was tried before a jury in the Superior Court (*Gray*, J.) on two counts of armed robbery and one count of robbery. He was convicted on all three charges and sentenced to serve four to eight years in the State Prison, with additional suspended terms of four to eight and three to six years. On appeal, the defendant raises two issues: (1) whether the trial court erred in failing to make a record of *ex parte* bench conferences with eight prospective jurors and, if so, whether it was reversible error; and (2) whether the *pro se* defendant may raise the preceding issue for the first time on appeal, where the trial court explained to the defendant his right to three peremptory challenges but failed also to explain his right to challenge for cause. We answer both questions in the affirmative, narrowly extending our prior decisions in *State v. Bailey*, 127 N.H. 416, 503 A.2d 762 (1985) and *Brien v. Wiley*, 124 N.H. 573, 474 A.2d 1015 (1984).

At the outset of the proceedings below, the defendant stated to the court his intention to represent himself at trial. In a lengthy colloquy with the defendant, the court expressed its concern that the defendant would be incapable of waging an effective defense and probed his understanding of the law, emphasizing the various dangers and pitfalls confronting *pro se* litigants. The court also explained the need to formally object to actions and rulings during trial. Ultimately, the court found that the defendant knowingly, voluntarily, and intelligently waived his right to counsel under the sixth and fourteenth amendments to the United States Constitution and part I, article 15 of the New Hampshire Constitution. This finding is not challenged

on appeal. The court, however, proceeded to explain certain procedural matters to the defendant, including the jury selection process.

> "THE COURT: What's going to happen, Mr. Brodowski, just for your information, we are going to bring a panel of jurors in here. I'm going to tell the jurors what this case is about, how long it's going to take. I'm going to ask them certain questions to determine if they are impartial jurors.
>
> We eventually will pick probably 12 jurors and one alternate juror. We will pick a total of 13 jurors. *You will then be allowed from those 13 that are finally picked to challenge any three of them for whatever reasons you want.*
>
> . . .
>
> You can do that *three times* if you wish. You don't have to do it three times, *but you have three challenges.* . . . [T]he State also has three challenges—and after the State and you have exercised your challenges, the State is going to get up and make an opening statement to the jury."

(Emphasis added.)

Jury selection began soon after this discussion. The court charged the jury pool in customary fashion by reading the indictment and propounding questions to the panel, followed by the clerk's calling the names of individual jurors. As each juror was called, the court asked the following questions: "Did you hear all the questions? Did you understand them? Do you have any problems?" The clerk called the names of twenty-three jurors from the pool, of whom eight notified the court of potential problems. After meeting individually with the judge, four of the eight were excused, one of the remaining four was later challenged peremptorily, and three of the eight served on the jury. The court neither recorded the *ex parte* discussions nor conveyed the substance of the discussions on the record to the defendant or the State. The defendant failed to object.

■■ We first consider whether the defendant's failure to object contemporaneously to the unrecorded discussion between the judge

and the eight venire panelists forecloses the defendant from challenging the procedure on appeal. "This court has consistently held that we 'will not consider issues raised on appeal that were not presented in the lower court.'" *State v. McAdams*, 134 N.H. 445, 447, 594 A.2d 1273, 1273 (1991) (quoting *State v. LaLiberte*, 124 N.H. 621, 621, 474 A.2d 1025, 1025 (1984)); *Perron v. City of Somersworth*, 131 N.H. 303, 305, 553 A.2d 283, 284 (1988) (axiomatic that matters ignored in the trial court may not be raised on appeal). As a general rule, the contemporaneous objection requirement is not relaxed simply because the defendant appears *pro se*. *Reynolds v. Cunningham, Warden*, 131 N.H. 312, 315, 556 A.2d 300, 302 (1988).

■ In *Brien v. Wiley*, 124 N.H. 573, 474 A.2d 1015, however, we pronounced a narrow exception to the rule, holding "that an exception is not required . . . with respect to an issue on which the trial judge has undertaken to explain the law to a party appearing *pro se*, if the judge has not also explained the exception requirement." *Id.* at 575, 474 A.2d at 1016. The fact that the case at bar involves an inadequate explanation of the law whereas *Brien* involved an inadequate explanation of the exception requirement does not, as the State suggests, distinguish these two cases. The issue in both concerns preservation of rights. Therefore, while the court in this case pressed upon the defendant the need to make timely objections, the corollary of the rule and the principle in *Brien* is applicable here; namely, full explanation of the objection requirement, with only partial explanation of the law, will serve, as in *Brien*, to hinder meaningful compliance with the objection requirement.

■ It follows from *Brien* that a *pro se* litigant can reasonably expect that a court undertaking to explain the law will give a reasonably complete and accurate explanation. Thus, the court, by undertaking to explain the jury selection process to the defendant in this case, became obligated to inform the defendant of his right to exclude jurors for cause in addition to exercising the three peremptory challenges. The defendant, unaware that he could have jurors excused for cause, may have thought it prudent to hoard his challenges; or, being misinformed, he may well have underestimated the significance of the *ex parte* discussions between the judge and venire panelists. We will, therefore, consider the merits of the defendant's claims despite his failure to object.

■ The defendant argues that the court's failure to record the *ex parte* discussions with the eight prospective jurors violates *State v.*

*Bailey*, 127 N.H. 416, 503 A.2d 762. There, we recognized that discussions outside the hearing of counsel between the judge and venire panelists serve to "minimize awkwardness and promote candor from the panelist." *State v. Bailey*, 127 N.H. at 421, 503 A.2d at 767 (citing *U.S. v. Pappas*, 639 F.2d 1, 2 (1st Cir. 1980), *cert. denied*, 451 U.S. 913 (1981)). We went on to hold, however, that such discussions without a record not only violate constitutional policy involving the defendant's right to an impartial jury, but also thwart effective appellate review. *Bailey*, 127 N.H. at 421, 503 A.2d at 767; *see also State v. Castle*, 128 N.H. 649, 652, 517 A.2d 848, 850 (1986) ("when *ex parte* discussions are held off the record, the defendant is deprived of access to the information needed to effectively exercise his right to challenge a juror"); *United States v. Rucker*, 557 F.2d 1046, 1049 (4th Cir. 1977) (court's *voir dire* examination must allow the defendant to make reasonably intelligent use of his peremptory challenges and challenges for cause).

The State argues that error is committed only when the court refuses a request for a record. Indeed, the court unerringly applied the holding in *Bailey* which, in fact, supports the State's position. Yet, we find no principled reason to continue to confine the record requirement to instances where one has been requested. The State conceded at oral argument that the value of encouraging juror candor weighs poorly against the significant benefits to be gained by preserving a record in all instances where judge and venire panelists hold *ex parte* discussions. Our goal is to establish "procedures that are reasonably necessary to promote . . . fairness and impartiality among jurors." *Bailey*, 127 N.H. at 421, 503 A.2d at 766. Accordingly, we hold that the trial court must preserve a record of the discussions at issue here, even if such a record is not requested.

The State next argues that any violation of *Bailey* in this case is harmless error beyond a reasonable doubt. *See Bailey*, 127 N.H. at 421, 503 A.2d at 767. We disagree. In *Bailey*, the court employed a probability test in considering: (1) whether the trial judge exhibited a general reluctance to excuse for cause, and (2) whether there was any reason to fear progressive reluctance to excuse jurors for cause as the jury pool diminished. *Id.* at 422, 503 A.2d at 767. In that case, the judge dismissed twelve of thirteen panelists, indicating his ready willingness to excuse for cause. *Id.* Also, the arrival of a new pool of panelists alleviated any fear that the judge would become progressively reluctant to excuse jurors. *Id.* Under those circumstances, we concluded that, as to the thirteenth panelist, "there was

only a very remote chance that a record of [his] statement would have revealed any indication of disqualification." *Id; see also Pappas,* 639 F.2d at 2 (harmless error where court excused twenty-three of twenty-five prospective jurors involved in *ex parte* communication with court and defense counsel did not exhaust peremptory challenges).

The circumstances in the case before us do not afford such assurances. The court excused only four of the eight jurors in question and, of the four remaining, only one was excused on a peremptory challenge even though a total of four peremptory challenges were exercised. While the record fails to show how the four challenges were allocated between the parties, we are unwilling to assume, for purposes of our decision, that the defendant failed to use all three of his challenges. Assuming that the defendant used all three of his peremptory challenges, a Hobson's choice may have required deploying two challenges elsewhere, leaving only one to thin the ranks of the remaining four jurors at issue. The second prong of *Bailey,* concerning diminishment of the juror pool, is indeterminate. The record neither sufficiently supports nor negates an inference that the court became progressively reluctant to excuse jurors. Accordingly, we are unable to say that the error was harmless beyond a reasonable doubt.

■ For the reasons stated, we reverse and remand for proceedings not inconsistent with this opinion.

*Reversed and remanded.*

All concurred.