Rockingham
No. 96-338

THE STATE OF NEW HAMPSHIRE

v.

RAYMOND E. DAVIS

September 24, 1998

*Philip T. McLaughlin*, attorney general (*Joseph N. Laplante*, assistant attorney general, on the brief, and *Mark D. Attorri*, assistant attorney general, orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendant.

THAYER, J. The defendant, Raymond E. Davis, appeals his convictions on two counts of theft by unauthorized taking or transfer, *see* RSA 637:3 (1996), and two counts of theft by misapplication of property, *see* RSA 637:10 (1996). He argues that: (1) the Superior Court (*Barry*, J.) erred in denying his motion to set aside the verdict based upon newly discovered evidence; and (2) the Superior Court (*Gray*, J.) erred in failing to *voir dire* prospective jurors about the presumption of innocence. We affirm.

The following facts were adduced at trial. The defendant served as the executive vice-president of the Hampton Economic Development Corporation (HEDC), a non-profit corporation organized to promote economic development in the town of Hampton and its surrounding areas. In 1993, one of HEDC's projects was the management of a $3.75 million dollar loan to Foss Manufacturing Company (Foss). The Foss loan was financed by the New Hampshire Business Finance Authority (BFA), a public agency that provided the funds through HEDC. HEDC, in turn, agreed to transfer all of the money received from the BFA to Foss when Foss met certain conditions. The defendant was responsible for administering the Foss loan.

During this same time period, the defendant, independent of his affiliation with HEDC, began pursuing business interests with Jack Conway, a concert promoter. The defendant told Conway that he was about to receive a substantial amount of money from an unrelated

business deal which he wished to invest in concerts. Conway, through a joint venture with Stage Left Productions (Stage Left), subsequently planned two concerts at the Cheshire Fairgrounds. The defendant did not invest any money in the concerts. Instead, the defendant and Conway sought other investors.

Two investors, Baron Financial (Baron) and Stephen Barnes, agreed to invest money in the two concerts, which were to take place on August 22 and September 19, 1993. Without the knowledge or authorization of HEDC's board of directors, the defendant entered into agreements on behalf of HEDC with Baron and Barnes to guarantee their respective investments in the concerts, in an amount totaling $181,250.

The first concert lost money, and the second concert was cancelled shortly before it was to be held. As a result, both Baron and Barnes sought to collect on HEDC's guarantees. Eventually, the defendant, on behalf of HEDC, paid a total of $75,000 in partial satisfaction of the guarantees. HEDC's board of directors neither authorized nor was even aware of these payments. The source of the $75,000 was an HEDC bank account containing the money for the Foss loan. In December 1993, as the Foss loan project neared completion and Foss attempted to collect the last transfer of the loan, an audit revealed that approximately $76,000 of the Foss loan funds which had been transferred from the BFA to HEDC had never been transferred to Foss. The defendant was subsequently charged with theft in a four-count indictment based upon the unauthorized payments totaling $75,000.

Although the defendant did not testify at trial, portions of his testimony before the grand jury were read into evidence. Both the defendant and Conway testified that they executed a written agreement between HEDC and Stage Left which provided that, as consideration for HEDC's guarantees of the concert investments, HEDC would receive from Stage Left a ten percent premium on the amounts guaranteed. The defendant admitted, however, that HEDC's board of directors had no knowledge of this agreement. Moreover, the defendant admitted that, in response to a request from HEDC's board of directors to compile a list of projects the defendant was working on, he never provided information relating to the concerts. At the time of trial, neither the State nor the defendant had located the written agreement.

A jury convicted the defendant on all four counts. During the weekend after his conviction, the defendant located a copy of the agreement between HEDC and Stage Left. Thereafter, he moved to set aside the verdict based upon newly discovered evidence. At the

hearing on the motion, the defendant admitted that although the agreement purported to have been signed on August 1, 1993, it was not in fact signed until sometime in November 1993, well after the agreement was allegedly made, the summer concerts were to be held, and the defendant paid out the $75,000. The court denied the defendant's motion to set aside the verdict. This appeal followed.

The defendant first argues that the trial court erred in denying his motion to set aside the verdict based upon newly discovered evidence. Essentially, the defendant contends that he is entitled to a new trial because the discovery of the guarantee agreement supports his defense at trial that he had no purpose to deprive HEDC of any money. We disagree.

■■ Whether newly discovered evidence requires a new trial is a question of fact for the trial court. We will sustain the trial court's decision unless its conclusion is clearly unreasonable. *See State v. Cook*, 135 N.H. 655, 666, 610 A.2d 800, 807 (1992). To prevail on a motion for a new trial based upon newly discovered evidence, the defendant must prove:

> (1) that he was not at fault for not discovering the evidence at the former trial; (2) that the evidence is admissible, material to the merits, and not cumulative; and (3) that the evidence is of such a character that a different result will probably be reached upon another trial.

*State v. Steed*, 140 N.H. 153, 157, 665 A.2d 1072, 1076 (1995) (brackets omitted).

The trial court concluded "that the newly discovered evidence [was] not of such a character that a different result would probably be reached at another trial." This conclusion is not clearly unreasonable. Although the State argued the agreement's absence to the jury, the discovery of the agreement does not refute a key issue during the trial — whether the defendant was authorized to make payments from HEDC's account containing funds for the Foss loan to anyone other than Foss. The defendant was not charged with any criminal activity relating to the guarantee agreement. Rather, the defendant was charged with making unauthorized payments from the Foss account. Therefore, the relevant issue was whether the defendant intended to deprive HEDC of the Foss money when he paid out $75,000 of the Foss loan money — an issue to which the agreement does not apply. Moreover, counsel conceded during oral argument that the fact that the agreement was signed months after it was allegedly made weakened its probative value. Accordingly, the

probative value of the agreement, if any, is not of such a character as to warrant a new trial.

In addition, the evidence in question is cumulative. "Cumulative evidence is defined as additional evidence of the same kind to the same point. Evidence which goes to a point upon which no evidence was adduced at the former trial is not cumulative." *State v. Abbott*, 127 N.H. 444, 450, 503 A.2d 791, 795 (1985) (quotations, ellipsis, and brackets omitted). At best, introduction of the actual agreement supports the testimony adduced at trial, from the defendant and Conway, that they executed a written agreement which provided for a ten percent return on HEDC's guarantee of the concert investments. The actual agreement is simply additional evidence of the defense's theory at trial that the defendant had entered into the agreement on behalf of HEDC and thus had no purpose to deprive HEDC of any money. *See id.* at 450, 503 A.2d at 795-96. Introduction of the agreement would have been cumulative of testimony already admitted and, furthermore, would not have addressed the State's contention that the defendant was not authorized to take the funds from HEDC's bank account.

▮ Accordingly, because the defendant failed to show that the agreement is of such a character that a different result will probably be reached in another trial, and because the evidence is cumulative, *see Steed*, 140 N.H. at 157, 665 A.2d at 1076, we find no error in the trial court's denial of the defendant's motion to set aside the verdict. We therefore need not address the State's argument that the defendant was at fault for not discovering the agreement prior to trial, an issue which the trial court also did not address.

The defendant next challenges the trial judge's failure to *voir dire* prospective jurors about the presumption of innocence. *See State v. Cere*, 125 N.H. 421, 424, 480 A.2d 195, 198 (1984). The defendant concedes that he did not object to the court's failure to conduct a *voir dire*. Relying on *State v. Skidmore*, 138 N.H. 201, 203, 636 A.2d 64, 65-66 (1993), the defendant maintains that the trial court's failure to *voir dire* in accordance with *Cere* requires no objection to preserve the issue for review. We disagree.

"[T]he right to a fair and impartial jury is violated when a trial court fails to use appropriate safeguards, but a contemporaneous objection is required to preserve this issue for appeal." *State v. Colbert*, 139 N.H. 367, 371, 654 A.2d 963, 966 (1995). We have "consistently held that we will not consider issues raised on appeal that were not presented in the lower court." *State v. Brodowski*, 135 N.H. 197, 200, 600 A.2d 925, 926 (1991) (quotations omitted).

Although we have recognized narrow exceptions to this rule, *see, e.g., id.* at 200, 600 A.2d at 927 (finding *pro se* defendant's claim preserved despite no objection where trial judge's explanation of jury selection process to defendant was incomplete); *Skidmore*, 138 N.H. at 203, 636 A.2d at 66 (finding defendant's claim preserved despite no objection to trial court's failure to give limiting instruction where court admitted defendant's prior conviction over his objection), we are unpersuaded that an additional exception should be created.

We agree with the defendant that the trial judge's obligation to *voir dire* prospective jurors about the presumption of innocence arises even absent a request from counsel. *Cere*, 125 N.H. at 424-25, 480 A.2d at 198. It does not necessarily follow, however, that a contemporaneous objection is not required in order to preserve the issue for our review. Unlike the admission of a defendant's prior conviction, *see Skidmore*, 138 N.H. at 202, 636 A.2d at 65, the failure to *voir dire* prospective jurors about the presumption of innocence is not inherently prejudicial. Accordingly, we will not create an exception to the contemporaneous objection requirement in this case.

*Cere* supports this conclusion. In *Cere*, defense counsel "alert[ed] the court to the fact that there might be some members of the panel who had already been found to be disqualified because they could not follow the instructions on the burden of proof." *Cere*, 125 N.H. at 423, 480 A.2d at 197. The defendant had shown sufficient facts to warrant a *voir dire* on the burden of proof and the presumption of innocence, a request which was denied by the trial court. *Id.* We remanded to the trial court for an affirmative finding that no juror who served on the defendant's jury could not or would not follow instructions on the burden of proof, or, if unable to make this finding, to set aside the verdict and order a new trial. *Id.* at 424, 480 A.2d at 198. Utilizing our supervisory authority, we also mandated that in the future, trial judges explain the burden of proof and the presumption of innocence to all prospective jurors. *Id.* Furthermore, we mandated that trial judges inquire of all prospective jurors whether any believe that a defendant does not have the presumption of innocence at trial or that a defendant bears the burden of proving his innocence, and, if so, whether those beliefs would prevent them from following the court's instructions. *Id.* at 424-25, 480 A.2d at 198.

Here, the trial judge did not *voir dire* prospective jurors about their beliefs concerning the presumption of innocence and

burden of proof, but, unlike in *Cere*, the defendant did not object. Objecting in a timely fashion gives the trial court an opportunity to correct any error and, correspondingly, properly preserves the issue for appeal. The defendant is asking for a rule that would relieve him of this obligation. Notwithstanding the trial court's obligation to *voir dire* prospective jurors about the presumption of innocence, we conclude that an objection was required to provide the trial court with the opportunity to correct its error. We also note that, unlike in *Cere*, the defendant has presented no facts suggesting that any juror was unable to follow instructions on the presumption of innocence. Accordingly, we decline to reach the merits of the defendant's argument. *See State v. Zeta Chi Fraternity*, 142 N.H. 16, 26, 696 A.2d 530, 537, *cert. denied*, 118 S. Ct. 558 (1997).

The remaining issues raised in the defendant's notice of appeal but not briefed are deemed waived. *Stewart v. Cunningham, Warden*, 131 N.H. 68, 71, 550 A.2d 96, 98 (1988).

*Affirmed.*

BRODERICK, J., sat but did not participate in the decision; the others concurred.