Hillsborough-southern judicial district
No. 98-469

### THE STATE OF NEW HAMPSHIRE

v.

### KENNETH MCCABE

January 19, 2001

*Philip T. McLaughlin*, attorney general (*Ann M. Rice*, senior assistant attorney general, on the brief and orally), for the State.

*Risa Evans*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BRODERICK, J. The defendant, Kenneth McCabe, appeals his convictions, following a jury trial in Superior Court (*Brennan*, J.), for felony reckless conduct and felony criminal threatening. *See* RSA 631:3 (1996), :4 (Supp. 2000). He argues that there was

insufficient evidence to sustain the reckless conduct verdict and that the trial court erred when instructing the jury on the crime of criminal threatening. We affirm.

The following facts are supported by the record. On the evening of January 2, 1997, the defendant went to the apartment of Tracy Horne, where she lived with her two young children. When he arrived, the children were in their bedrooms and remained there for the balance of the night. It was apparent to Horne that the defendant was intoxicated. She told him to leave, but he refused. Following an argument, Horne allowed the defendant to spend the night at the apartment. Before retiring to the living room couch, the defendant asked Horne for his handguns, a .38 and a .45 caliber, which he had left in her bedroom. After more arguing, she told him to "take them."

Horne's three-bedroom apartment was located on the first floor of her building, with access to the basement. All of the bedrooms were within twenty to twenty-five feet of the living room couch, and one of the children's beds was located on a common wall with the living room.

Around 2:00 a.m., Horne heard a loud bang from the direction of the living room. She opened her bedroom door and twice asked the defendant what it was, but he did not respond. She then returned to her bedroom, locked her door, and went back to bed.

The next morning when she left to bring her son to school, she noticed the defendant asleep on the couch. On her return, she found the defendant asleep in her bedroom. At that time, her daughter, who had remained home from school, pointed out a hole in the couch. When Horne asked the defendant about it, he said he had intended to shoot himself in the chest, but shot the couch instead. Horne and her daughter left the apartment and did not return for several hours.

When Horne returned, she told the defendant to leave. After an argument, he complied. Shortly thereafter, the defendant telephoned her to ask if their relationship was over. When she said, "Yes," he responded, "No it's not, look at your teddy bear." Horne went to her bedroom and found the stuffed animal next to her bed with a bullet hole through its chest. She then found two shell casings — one, a .38 caliber, in her bedroom and a second, a .45 caliber, in the living room near the couch. Horne testified that she was very frightened by the call and the discovery of the shell casings, but did not contact the police because she feared the defendant's reaction. As soon as her son returned from school, Horne and her children left the apartment for the night.

Between the time she left her apartment with her children on January 3, 1997, and the time she called the police the next day, Horne returned to her apartment twice — once accompanied by friends and once alone. After talking to several friends and taking time to collect herself, Horne decided to report the defendant's actions to the police.

On Saturday, January 4, 1997, she contacted the Nashua Police Department. Officer Landry met her at the apartment, where she gave him the teddy bear and the shell casings. He accompanied her to the police station, but she declined to give a written statement due to her fear of the defendant. She did, however, secure a restraining order against him.

Several days later, Horne attended a meeting at Brookside Hospital. While there, she was told that the defendant was outside in an intoxicated state. Fearful that he had come to see her, Horne called the police and later agreed to provide a written statement about the events which had occurred at her apartment.

About a month later, Detective Lavoie was assigned to investigate Horne's case. He met her at the apartment and examined the couch. He discovered that the bullet had traveled completely through the couch and the floor into the basement. He followed the bullet's path and observed that it had nicked a ceiling beam in the basement and possibly the basement wall as well. From his investigation, Detective Lavoie concluded that the bullet was large and had traveled at a high velocity. Later, at the police station, he took a second statement from Horne, which she read and signed.

In April 1997, the defendant was indicted for felony reckless conduct and felony criminal threatening. He was convicted on both counts by a jury in November 1997. On appeal, he argues that: (1) the evidence was insufficient to establish that his conduct was criminally reckless; (2) the trial court's jury instructions impermissibly amended the criminal threatening indictment; and (3) the trial court erred by instructing the jury that he was not required to have a purposeful mental state when he allegedly used a deadly weapon in violating the criminal threatening statute. We affirm.

I

The defendant first argues that the evidence presented at trial was insufficient to establish that he was criminally reckless. The defendant was charged with reckless conduct in that he "recklessly engag[ed] in conduct knowing that this conduct may have placed others in the immediate area in danger of serious bodily injury, to

wit: by discharging a firearm (pistol) into a couch inside [a] residence . . . , the said residence being at the time, occupied by three other people, all of which [sic] were within a range of five to twenty feet of the point of discharge." See RSA 631:3. In order to convict on that charge, the jury was required to find beyond a reasonable doubt that the defendant was "aware of and consciously disregard[ed] a substantial and unjustifiable risk that [serious bodily injury] [would] result from [the charged conduct]." RSA 626:2, II(c) (1996).

The defendant asserts that because he did not point a handgun in the direction of any occupants of the apartment, and, in fact, shot in the direction of the floor and away from the bedrooms, his conduct was not culpable. We disagree.

In order to prevail on a challenge to the sufficiency of the evidence, a defendant must demonstrate that no rational trier of fact, evaluating all of the evidence and its reasonable inferences in the light most favorable to the State, would conclude beyond a reasonable doubt that he had committed the charged crime. See State v. Zeta Chi Fraternity, 142 N.H. 16, 20, 696 A.2d 530, 534, cert. denied, 118 S. Ct. 558 (1997). This case presents ample evidence of criminal recklessness. The defendant was intoxicated when he fired a handgun in close proximity to three people. See RSA 626:2, II(c) ("A person who creates such a risk but is unaware thereof solely by reason of having voluntarily engaged in intoxication . . . also acts recklessly."). Horne was in her bedroom, approximately twenty feet from the couch and separated from the defendant by nothing more than an interior wall. Her daughter was even closer.

According to Horne's testimony, the defendant admitted he completely missed his intended target, which was his chest. The evidence established that the bullet had sufficient force and velocity to pass through the couch cushion, a box spring, a carpet-covered floor, and then ricochet off a ceiling beam in the basement. The defendant was unable to direct the path of the bullet and could not predict where the bullet might ricochet once it had been fired. A reasonable jury could certainly conclude that, under these circumstance, the defendant acted recklessly and placed the occupants of the apartment in danger of serious bodily injury.

## II

The defendant next contends that the trial court's jury instructions impermissibly amended the criminal threatening indictment. The defendant concedes that his trial counsel did not object to the

now questioned jury instructions. It is well-established that contemporaneous objections are required to preserve issues for appeal. *See State v. Johnson*, 130 N.H. 578, 587, 547 A.2d 213, 218 (1988). This long-standing requirement is "grounded in common sense and judicial economy," and applies equally to civil and criminal matters. *Id.*; *see State v. Josselin*, 119 N.H. 936, 936-37, 409 A.2d 1336, 1336 (1979). The need for a contemporaneous objection "is particularly appropriate where an alleged error involves a jury instruction." *State v. Sinbandith*, 143 N.H. 579, 581, 729 A.2d 994, 996 (1999) (quotations omitted) (finding that specific challenge to "jury instructions as given" is required). We will not bend this requirement to permit appellate "counsel to comb the record on a treasure hunt for issues never properly brought before the trial judge." *State v. Seymour*, 142 N.H. 620, 626, 707 A.2d 130, 134 (1998) (quotation and bracket omitted).

The defendant's reliance on *State v. Prevost*, 141 N.H. 559, 689 A.2d 121 (1997), is misplaced. Although in that case we held that automatic reversal is required when a trial court's jury instructions effectively amend an indictment, the record in *Prevost* demonstrated that the issue was brought to the trial court's attention and properly preserved for appeal. *See id.* at 560, 689 A.2d at 122. Because the defendant in this case did not contest the claimed error before the trial court, the issue is waived.

◼ Additionally, we decline the defendant's invitation to enlarge the narrow exceptions to the contemporaneous objection requirement. *See State v. Skidmore*, 138 N.H. 201, 202-03, 636 A.2d 64, 66 (1993); *see also State v. Davis*, 143 N.H. 8, 13, 718 A.2d 1202, 1205 (1998). This case involves neither a *pro se* defendant nor the need for a limiting instruction regarding the introduction of evidence of a prior crime. *See Skidmore*, 138 N.H. at 202-03, 636 A.2d at 65-66; *see also State v. Brodowski*, 135 N.H. 197, 200, 600 A.2d 925, 926-27 (1991); *Brien v. Wiley*, 124 N.H. 573, 575, 474 A.2d 1015, 1016 (1984). "When a defendant's affirmative challenge is necessary to apprise a court that a constitutionally protected interest is at stake, it is reasonable to construe a defendant's silence as a waiver of the challenge. Because the defendant failed to object to the adequacy of the jury instructions with respect to the [criminal threatening] indictment, we decline to address the merits of that argument." *Sinbandith*, 143 N.H. at 582, 729 A.2d at 996 (quotation, citation, and brackets omitted).

## III

Finally, the defendant claims that the trial court erred in its answer to a jury question by effectively advising the jury that it did not have to find that he had a purposeful mental state when he allegedly used a deadly weapon in violating the criminal threatening statute. The defendant does not contest that the handgun used to shoot the teddy bear was a deadly weapon. *See* RSA 625:11, V (1996). At the close of the evidence, the trial court instructed the jury that

> [t]he definition of the crime [of criminal threatening] has three (3) parts. The State must prove each part of this definition beyond a reasonable doubt. Thus, the State must prove: 1) [t]hat the defendant acted purposely and; 2) [t]hat the defendant, by his physical conduct placed or attempted to place another person in fear of imminent bodily injury or physical contact and; 3) [t]hat the defendant used a deadly weapon.

During deliberations, the jury submitted a question to the court: "Does the intent when the defendant shot the bear have to be the same intent when he made the threat over the phone to imply a deadly weapon?" Over the defense counsel's objections, the court answered, "No." The defendant contends that the response was erroneous because the State was required to prove that he acted with a purposeful mental state when he shot the teddy bear. We disagree.

■ Although use of a deadly weapon is an element of the crime of felony criminal threatening, it is not a material element as defined in RSA 625:11, IV (1996). Accordingly, the State was not obligated to prove a specific *mens rea* with respect to that element. *See State v. Demmons*, 137 N.H. 716, 719, 634 A.2d 998, 1000 (1993) (culpability requirements apply only to material elements of offense).

RSA 631:4, I(a) requires, in pertinent part, that "[a] person is guilty of criminal threatening when[] [b]y physical conduct, the person purposely places or attempts to place another in fear of imminent bodily injury or physical contact." In fact, RSA 631:4, I(a) to (e) define five discrete circumstances which constitute the offense of criminal threatening. Each statutory provision criminalizes conduct that is undertaken with the specific intent to engender fear, terror, or related emotions in another person. *See* RSA 631:4, I(a)-(e). None identify the use of a deadly weapon as an element of the offense. *See id.* The only statutory reference to the use of a deadly weapon is contained in the penalty section. *See id.* :4, II(b).

This provision classifies criminal threatening as a misdemeanor, except when a deadly weapon is used. *See id.* In that circumstance, the offense is increased to a class B felony. *See id.* :4, II(a)(2). The statute does not require that the weapon's use be accompanied by a culpable mental state.

■ The purposeful *mens rea* required for the material elements of criminal threatening does not apply to the penalty enhancing provision of the statute. *See* RSA 626:2, II (1996) (defining culpable mental states). "Because culpability applies only to material elements, . . . purposefulness is required with respect to the act of [criminal threatening] alone, and is not carried over to the separate variants." *State v. Demmons*, 137 N.H. at 719, 634 A.2d at 1000. Thus, RSA 631:4, I(a) does not require the defendant to have acted with the purpose to place or attempt to place Horne "in fear of imminent bodily injury or physical contact" when he shot the teddy bear, but only that he had such a purposeful mental state when he made the threat utilizing the teddy bear.

Because we find sufficient evidence to sustain the verdict and that the trial court did not err in instructing the jury, we affirm.

*Affirmed.*

THAYER, J., sat for oral argument but resigned prior to the final vote; BROCK, C.J., and NADEAU and DALIANIS, JJ., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred; NADEAU and DALIANIS, JJ., took part in the final vote by consent of the parties.