# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2023-0352, <u>State of New Hampshire v. Adam Hersom</u>, the court on January 24, 2025, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The State of New Hampshire (the State) appeals a decision of the Superior Court (<u>Attorri</u>, J.) granting the defendant's, Adam Hersom, motion to exclude an audio recording made by the complainant in violation of the Wiretapping and Eavesdropping Law, RSA chapter 570-A. We affirm and remand.

I.  <u>Background</u>

The following facts are supported by the record. In January 2021, the complainant reported to the police that the defendant, her husband at the time, had physically and sexually assaulted her in New Hampshire in the fall of 2018. The complainant reported that the day after the alleged assault, she went to Maine to confront the defendant and surreptitiously recorded a part of her conversation with him on her phone. The defendant made inculpatory statements to the complainant on the recording. The complainant emailed a copy of the recording to the police. In February 2021, a grand jury indicted the defendant on one count of aggravated felonious sexual assault–domestic violence, <u>see</u> RSA 632-A:2, I(b) (2016); RSA 632-A:2, V (Supp. 2024), and one count of second degree assault–domestic violence, <u>see</u> RSA 631:2, I(a) (2016); RSA 631:2, III (Supp. 2024).

Subsequently, the defendant moved to exclude the recording pursuant to RSA chapter 570-A. He argued that there was reason to believe the recording was made in New Hampshire, not in Maine. The State objected, arguing that the defendant had put forward no evidence that contradicted the complainant's version of events. In February 2022, following a hearing at which the parties presented offers of proof, the Trial Court (<u>Ignatius</u>, J.) denied the motion to exclude, reasoning that there was "no credible basis to conclude the [recording] took place anywhere other than in Maine."

In September 2022, the defendant renewed his motion to exclude the recording. Defense counsel explained that he had been able to inspect the recording's file properties, which revealed that the file was created on "9/28/2019 [at] 11:55 pm." The defendant argued that this information "casts

serious doubts as to when the recording was actually made and [it] should therefore be excluded." He asserted that if the recording was made in 2019, it would be irrelevant to the charges. Further, the defendant argued that because he was not living in Maine in 2019, it called into question whether the recording was made in Maine.

After a hearing, the trial court granted the renewed motion. The court stated that "there are strong indications that the recording was not made in Sanford, Maine in November 2018 . . . but instead on September 28, 2019 near midnight." The court concluded that there was a "strong possibility that the recording at issue was in fact made" in New Hampshire.

In October 2022, the State moved for reconsideration of the trial court's ruling on the renewed motion to exclude. The court granted the motion in part. The court suggested that an evidentiary hearing on the motion ought to be conducted and that "[b]oth parties now appear to seek [the complainant's] sworn testimony on this issue, which would be appropriate."

In December 2022, the Trial Court (Attorri, J.) issued an order explaining that it would hold an evidentiary hearing at which the State would bear the burden of proving, by a preponderance of the evidence, that the recording was not subject to the exclusionary rule of RSA 570-A:6. The court observed that the recording might fall under the felony provision of RSA chapter 570-A. The court stated that exclusion would be required if the recording was made in New Hampshire and if the complainant acted "willfully." Therefore, the court stated that the hearing would be held "on those two factual issues."

In February 2023, the trial court held the evidentiary hearing. At the outset, the court observed that "hearsay testimony is admissible at suppression hearings." However, the court noted that "the State does have the burden here" and it would "consider the fact that it's hearsay testimony when deciding how much weight to give the testimony."

The State called a former Ossipee Police Department detective to testify. The detective testified that he interviewed the complainant in January 2021. The complainant told him about the alleged sexual assault and the recording she had made in Maine. He testified that the complainant did not say that she knew it was illegal to record the conversation in New Hampshire. He also stated that the complainant never gave any indication that she knew about New Hampshire's wiretap statute.

On cross-examination, the detective testified that the complainant asked him "if [the recording] could be used by the way she . . . obtained it." He stated that he asked to look at the file of the recording on her phone to see if it had a date and timestamp on it, but the complainant told him she did not have the

2

file on her phone and that she would email it. She indicated that the defendant had deleted the file from her phone but that she had kept it in other electronic locations. The detective testified that he never saw the file properties of the recording he reviewed. Defense counsel showed the detective the file properties of the recording that was in the parties' possession, which indicated that it was created on "September 28th, 2019, at 11:55 p.m."

The State also called a Carroll County Attorney's Office investigator to testify. The investigator testified that she spoke with the complainant in January 2023. The complainant described the alleged sexual assault to the investigator and said that she had driven to Maine to confront the defendant. The complainant explained the circumstances of the recording, and told the investigator that when the defendant learned the recording existed he destroyed her phones. The complainant told the investigator that she had saved the recording through "multiple methods." When the investigator asked the complainant about the wiretapping statute in New Hampshire, she replied that she was aware that Maine and New Hampshire law differed. The investigator testified that the complainant stated that she "did not have knowledge of the law itself" and that she did not "look the RSA up." The investigator testified that any knowledge the complainant had about the wiretapping law came after she made the recording, and that the complainant maintained that the recording was made in Maine.

In April 2023, the trial court issued an order granting the defendant's motion to exclude the recording. The court observed that the State chose not to present the testimony of the complainant and instead presented "the hearsay testimony of two investigators who had interviewed her about the recording." The court stated that "[t]his was obviously a strategic decision by the State, as it was aware it bore the burden of proof . . . and apparently sought to sustain that burden while also shielding [the complainant] from cross-examination before trial." The court found "that the State has failed to carry its burden of showing that the recording was made in Maine as it contends." Further, the court found "that the State has also failed to sustain its burden of proving that, if [the complainant] made the recording in New Hampshire, she did so without knowledge of the legal prohibition against such covert recordings."

The State unsuccessfully moved for reconsideration. This appeal followed.

II.    Analysis

In general, the trial court has broad discretion to determine the admissibility of evidence, and we will not upset its ruling absent an unsustainable exercise of discretion. State v. Jette, 174 N.H. 669, 673 (2021).

3

To demonstrate an unsustainable exercise of discretion, the State must show that the trial court's ruling was clearly untenable or unreasonable to the prejudice of its case. See id. at 673-74. When reviewing a trial court's ruling on a motion to exclude evidence, we accept the trial court's factual findings unless they lack support in the record or are clearly erroneous, and we review its legal conclusions de novo. See State v. Minson, 173 N.H. 501, 504 (2020).

On appeal, the State argues that the trial court unsustainably exercised its discretion when: (1) it found that the State "failed to sustain its burden of proving that, if [the complainant] made the recording in New Hampshire, she did so without knowledge of the legal prohibition against such covert recordings"; and (2) it found "that the State has failed to carry its burden of showing that the recording was made in Maine." Alternatively, the State argues that the trial court erred as a matter of law in rejecting the State's statutory construction argument.

We begin with the State's statutory construction argument. The relevant statutory provisions follow. RSA 570-A:6 provides that:

> Whenever any telecommunication or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial . . . before any court, [or] grand jury . . . if the disclosure of that information would be in violation of this chapter.

RSA 570-A:6 (2001). RSA 570-A:2, I, provides that:

> I. A person is guilty of a class B felony if, except as otherwise specifically provided in this chapter or without the consent of all parties to the communication, the person:
>
> > (a) Wilfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any telecommunication or oral communication;
> >
> > . . .
> >
> > (c) Wilfully discloses, or endeavors to disclose, to any other person the contents of any telecommunication or oral communication, knowing or having reason to know that the information was obtained through the interception of a telecommunication or oral communication in violation of this paragraph; or

4

(d) Willfully uses, or endeavors to use, the contents of any telecommunication or oral communication, knowing or having reason to know that the information was obtained through the interception of a telecommunication or oral communication in violation of this paragraph.

RSA 570-A:2, I (2001). RSA 570-A:2, I-a provides that:

A person is guilty of a misdemeanor if, except as otherwise specifically provided in this chapter or without consent of all parties to the communication, the person knowingly intercepts a telecommunication or oral communication when the person is a party to the communication or with the prior consent of one of the parties to the communication, but without the approval required by RSA 570-A:2, II(d).

RSA 570-A:2, I-a (2001).

The State begins by asserting that RSA 570-A:6 requires suppression only if the disclosure of evidence derived from the interception would be in violation of the chapter. The State observes that RSA 570-A:2, I(c) and (d) "prohibit willfully disclosing or using the contents of an intercepted communication when the person disclosing or using the communication has reason to know that it was obtained 'in violation of this paragraph.'" The State argues that "those subparagraphs only apply to communications intercepted in violation of RSA 570-A:2, I, which prohibits the willful interception of communications 'except as otherwise specifically provided in this chapter or without the consent of all parties to the communication.'" The State argues that the latter phrase exempts all one-party recordings from RSA 570-A:2, I, because RSA 570-A:2, I-a sets out "a one-party consent prohibition" and "[n]o part of RSA chapter 570-A prohibits the disclosure of a communication that is intercepted in violation of RSA 570-A:2, I-a." Put simply, the State's position is that all one-party recordings are only violations of RSA 570-A:2, I-a, and are not subject to suppression under RSA 570-A:6. Therefore, the State concludes that the trial court erred in excluding the complainant's one-party recording of the defendant.

The State's argument is foreclosed by State v. Clark, 177 N.H. ___ (2024), 2024 N.H. 64. In Clark, we "clarified that a one-party recording of a communication can be either a misdemeanor or a felony depending upon the person's mental state." Clark, 177 N.H. at ___, 2024 N.H. 64, ¶12. "RSA 570-A:2, I, requires a willful mens rea in order for a one-party interception of a communication to be a felony." Id. at ___, 2024 N.H. 64, ¶11. "Willfully" in this context "means that the [complainant] must act with an intentional or reckless disregard for the lawfulness of [her] conduct. In other words, the

5

[complainant] has not violated RSA 570-A:2, I, if [she] has a 'good faith' belief that [her] conduct was lawful." State v. Mueller, 166 N.H. 65, 69 (2014) (quoting Fischer v. Hooper, 143 N.H. 585, 589 (1999)). Accordingly, as the trial court correctly concluded, if the complainant acted "willfully" in recording the defendant without his knowledge or consent, the recording is subject to exclusion under RSA 570-A:6. See RSA 570-A:2, I.

Next, we address whether the trial court sustainably exercised its discretion in finding that the State did not meet its burden at the evidentiary hearing. The State asserts that "[a]ll the evidence before the court," which consisted of the testimony of the detective and the investigator, "supported the conclusion that the [complainant] had no knowledge of the wiretap statute when she recorded her conversation with the defendant." Further, the State argues that it met its burden to prove that the recording was made in Maine if the evidence marshalled by the State and the defendant is considered "on balance."

At the outset, we note that the State did not seek reconsideration of the trial court's decision placing the burden on the State at the evidentiary hearing. Further, the State does not appeal that decision. Accordingly, we express no opinion as to whether the trial court correctly placed the burden on the State at the evidentiary hearing.

"We have held that the trier of fact may accept or reject in whole or in part any testimony of any witness or party." Gordon v. Gordon, 117 N.H. 862, 865 (1977). "Credibility as well as weight given to testimony is a question of fact for the court and if the findings could reasonably be made on all the evidence they must stand." Id. at 865-66. "The fact finder may accept or reject, in whole or in part, the testimony of any witness or party, and is not required to believe even uncontroverted evidence." In the Matter of Aube & Aube, 158 N.H. 459, 466 (2009).

Applying these legal principles here, we conclude that the trial court, as the trier of fact, was free to reject in whole, or in part, the testimony offered by the witnesses at the evidentiary hearing. See id. The court was also not required to believe even uncontroverted evidence offered by the State. See id. The court could also determine the weight to give the testimony. See Gordon, 117 N.H. at 865. Indeed, in its order the court expressly called into question the lack of "primary, first-hand evidence to resolve the doubts and concerns expressed in its previous orders" and stated that it was "doubtful that the hearsay disclaimers offered through the State's investigators would have been sufficient to persuade [the court] on an issue as subjective as mens rea." Given the trial court's authority, as the trier of fact, to reject the hearsay testimony or limit its weight, we cannot conclude that the trial court erred in finding that

6

the State did not meet its burden.  Accordingly, we affirm and remand for further proceedings.

<u>Affirmed and remanded</u>.

MACDONALD, C.J., and BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.

**Timothy A. Gudas,
Clerk**