NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
Case No. 2023-0166
Citation: State v. Cummings, 2025 N.H. 15


THE STATE OF NEW HAMPSHIRE

v.

CHRISTIAN CUMMINGS

Argued: January 16, 2025
Opinion Issued: April 1, 2025


John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Robert L. Baldridge, assistant attorney general, on the brief and orally), for the State.

Rothstein Law LLC, of Exeter (David M. Rothstein on the brief), and Matthew McNicoll, assistant appellate defender, of Concord, orally, for the defendant.


DONOVAN, J.

[¶1] Following a jury trial in Superior Court (Anderson, J.), the defendant, Christian Cummings, was convicted of negligent homicide for the

death of his 17-month-old daughter, K.C.[1]  See RSA 630:3, I (2016).  On appeal, the defendant argues that: (1) the trial court committed plain error by informing the jury that it could convict him of negligent homicide by finding that urosepsis was the sole cause of K.C.'s death; (2) alternatively, his trial counsel's failure to object to the court's response constituted ineffective assistance of counsel; and (3) the trial court erred by denying his motion to dismiss based upon the insufficiency of the evidence.  We conclude that the trial court did not commit plain error in responding to the jury's question, trial counsel did not render ineffective assistance of counsel by failing to object to the court's answer, and the trial court properly denied the defendant's motion to dismiss because the State introduced sufficient evidence to convict the defendant of negligent homicide beyond a reasonable doubt.  Accordingly, we affirm.

## I.  Facts

[¶2] The jury could have found the following facts.  The defendant lived with his partner and their daughter, K.C., who was born with just one kidney, in a mobile home on property owned by the defendant's grandparents.  The New Hampshire Division for Children, Youth and Families (DCYF) prohibited K.C. from living in the primary house on the property owned by the defendant's grandparents.  However, in early 2019, the defendant, K.C., and K.C.'s mother moved into a bedroom in the primary house because the mobile home had no heat, rendering it uninhabitable in the winter.  The primary house, in which eight people and numerous pets lived, "was in a state of squalor."  K.C. slept in a dirty baby bouncer in the bedroom because she had vomited in her play place and the defendant did not know how to clean it.  The bedroom was infested with flies, and a caged chinchilla was also kept in the room.

[¶3] Once K.C. began residing in the primary house, one of the defendant's family members observed that she seemed "a little sluggish."  She also had a serious lice infestation and a stomach virus that caused her to vomit.  Another family member described K.C. coughing "[l]ike a mountain lion screaming" for weeks.  Shortly before K.C.'s death, one of the defendant's brothers observed her breathing rapidly for a few hours.  When the brother expressed his concern about K.C.'s condition, the defendant told his brother to "shut up."

[¶4] In the middle of the night on February 14, 2019, K.C.'s mother screamed that K.C. was not breathing.  K.C.'s grandmother, and later a first-responding police officer, performed CPR.  A paramedic observed that K.C. was limp, lifeless, and very pale with bluish lips.  He also noted that K.C. had "bugs on her" and a "brown substance in her ears."  The paramedics took K.C. to the

---

[1] The jury also returned guilty verdicts of reckless conduct and child endangerment.  The defendant does not challenge these verdicts on appeal.

emergency room at a nearby hospital, where she was pronounced dead. She was 17 months old.

[¶5] As relevant to this appeal, a Hillsborough County Grand Jury indicted the defendant on two counts of negligent homicide. The first negligent homicide count alleged that urosepsis was the cause of K.C.'s death. The second count alleged that a combination of "urosepsis, dehydration, and/or electrolyte imbalance" caused her death. During trial, the State presented multiple witnesses, including the defendant's family members, police officers, and a paramedic. It also presented Dr. Christine James, a former New Hampshire Associate Medical Examiner and an expert in forensic, anatomical, and clinical pathology, who conducted K.C.'s autopsy. She explained how the "copious" number of lice caused iron deficiency anemia, which resulted in K.C. "feeling run-down, lethargic, tired, [and] drained." She also testified that K.C.'s electrolytes, such as her sodium, chloride, and urea nitrogen, were all elevated and consistent with dehydration. K.C.'s dark brown urine also tested positive for E. coli, demonstrating that she had a urinary tract infection (UTI). According to Dr. James, K.C.'s UTI could have been caused by improper hygiene, such as sitting in a dirty diaper. She also testified that K.C.'s UTI spread from K.C.'s urinary tract to other organs. Dr. James testified that K.C. had probable urosepsis, explaining that a conclusive sepsis diagnosis could only be made in living people based on very specific criteria. Ultimately, Dr. James opined that K.C.'s UTI and probable urosepsis, together with dehydration and iron deficiency anemia, caused her death.

[¶6] After the State rested, the defendant moved to dismiss both negligent homicide indictments, arguing that the State introduced insufficient evidence to support a conviction on either charge beyond a reasonable doubt. The court dismissed the count that alleged that urosepsis was the sole cause of death but denied the motion seeking to dismiss the second count.

[¶7] The defense's case consisted solely of testimony from Dr. Thomas Andrew, a former New Hampshire Chief Medical Examiner and an expert in forensic medicine and forensic pathology. He disagreed with the conclusion of the State's expert regarding K.C.'s cause of death. More specifically, he disagreed with the diagnosis of probable urosepsis because K.C.'s blood did not contain bacteria. Dr. Andrew also disagreed that a UTI and the tissue slides that he and Dr. James reviewed were sufficient to conclude that K.C. had sepsis. Instead, he opined that had he conducted K.C.'s autopsy, he would have listed K.C.'s cause of death as sudden unexplained death in childhood (SUDC). Dr. Andrew also stated that he would have listed a UTI with E. coli "as an extrinsic factor but not causative or contributory" to death.

[¶8] During its deliberations, the jury submitted a question to the trial court asking: "Does the cause of death have to be urosepsis, dehydration, and/or electrolyte imbalance, all three, or any of the three?" The court

3

consulted with the parties and by agreement informed the jury that it could find that the cause of death was "any one or any combination of [urosepsis, dehydration, and electrolyte imbalance]." The jury then convicted the defendant, and this appeal followed.

## II. Analysis

[¶9] On appeal, the defendant argues that the trial court's answer to the jury question constitutes reversible error because the response allowed the jury to rely upon urosepsis as the sole cause of K.C.'s death. According to the defendant, that answer "revived the previously dismissed indictment." Because the defendant's trial counsel did not object to the court's answer, the defendant raises this argument as plain error.

[¶10] The plain error rule is "used sparingly" and is "limited to those circumstances in which a miscarriage of justice would otherwise result." State v. Rawnsley, 167 N.H. 8, 11 (2014). To find plain error: (1) there must be error; (2) the error must be plain; and (3) the error must affect substantial rights. State v. Leroux, 175 N.H. 204, 208 (2022). If all three conditions are met, we may exercise our discretion to correct a forfeited error only if the error meets a fourth criterion: the error must seriously affect the fairness, integrity, or public reputation of judicial proceedings. Id. at 208-09. The defendant bears the burden of demonstrating plain error. State v. Mueller, 166 N.H. 65, 70 (2014).

[¶11] Here, even if we assume that the trial court erred, and its error was plain, we conclude that any such error fails to satisfy the third factor of the test. Generally, to prove that an error affected substantial rights, the defendant must show that the error was prejudicial, i.e., that it affected the outcome of the proceeding. Id. at 70. "We will find prejudice under the third prong when we cannot confidently state that the jury would have returned the same verdict in the absence of the error." Id.

[¶12] The defendant contends that the answer was prejudicial because the answer permitted a "very real prospect" that "at least one juror relied on urosepsis as the sole cause of death." In light of the significant evidence that multiple medical conditions collectively contributed to K.C.'s death, we are unpersuaded. At trial, Dr. James testified that the combination of iron deficiency anemia, probable urosepsis, dehydration, and an electrolyte imbalance caused K.C.'s death. K.C.'s lice infestation resulted in anemia, leaving her feeling "run-down, lethargic, tired, [and] drained." Then, she contracted a UTI that went unrecognized and untreated, ultimately spreading through her body. As a result, Dr. James opined that K.C. developed "probable sepsis," explaining that a conclusive sepsis diagnosis could only be made in living people based on very specific criteria. According to Dr. James, K.C.'s UTI caused her to become dehydrated, as evidenced by her dark brown urine and electrolyte imbalance. K.C. "had elevated sodium, elevated chloride, and

4

elevated urea nitrogen, which were consistent with dehydration and possible renal failure." Moreover, Dr. Andrew disagreed with the conclusion that K.C. had probable urosepsis, further demonstrating the improbability that a juror found that urosepsis alone caused K.C.'s death. At the beginning of its closing argument, the State reiterated the point that K.C.'s death resulted from "some combination of urosepsis, dehydration, and an electrolyte imbalance." Given the evidence that all of K.C.'s medical conditions combined to cause her death, we conclude that even if the trial court erred, the jury would have returned the same verdict. Accordingly, we conclude that any error associated with the trial court's response to the jury question did not prejudice the defendant's case.

[¶13] Next, the defendant asserts that his trial counsel's failure to object to the court's answer constituted ineffective assistance of counsel. More specifically, he contends that by not objecting to the court's proposed answer or requesting a specific instruction, his trial counsel "revived the allegation, and expanded the grounds on which the jury could convict [him]." Although "we maintain a strong preference for collateral review of ineffectiveness claims," we permit direct appellate review in the "extraordinary case" where "the factual basis of the claim appears indisputably on the trial record." State v. Thompson, 161 N.H. 507, 527 (2011) (quotation omitted). Such cases may include the "failure to object to an instruction." Id. at 526-27. Because the defendant argues that this case presents this very scenario, we will treat his ineffective assistance of counsel argument as reviewable on direct appeal.

[¶14] The defendant raises his ineffective assistance of counsel claim under the Federal Constitution and not the State Constitution. The Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant reasonably effective assistance of counsel. U.S. CONST. amends. VI, XIV. To prevail upon a claim of ineffective assistance of counsel, a defendant must show, "first, that counsel's representation was constitutionally deficient and, second, that counsel's deficient performance actually prejudiced the outcome of the case." Id. at 528 (quotation omitted). To satisfy the first prong, the defendant must show that counsel's representation fell below an objective standard of reasonableness. State v. Collins, 166 N.H. 210, 212 (2014). To satisfy the second prong, the defendant must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 213.

[¶15] Here, we need not decide whether trial counsel's failure to object fell below an objective standard of reasonableness, because we are not persuaded that any failure to object prejudiced the outcome of the case. In light of the significant evidence concerning the severity of K.C.'s multiple medical conditions, we are confident that the jury would have returned the same verdict in the absence of counsel's failure to object. During Dr. James's testimony, she specified that no factor alone caused K.C.'s death. Rather, she opined that the various medical conditions combined to cause K.C.'s death. In

response to a question from the State asking how the factors "work[ed] together to cause death," she explained that K.C.'s "sodium level [was] exceptionally high. So that urosepsis with the dehydration is her cause of death" along with "iron deficiency anemia due to the lice because she was already at a weakened state because of that infestation." Therefore, we cannot conclude that there exists a reasonable probability that, but for the failure to object, the jury's verdict would have differed.

[¶16] Lastly, the defendant argues that the trial court erred when it denied the defendant's motion to dismiss the negligent homicide charge that alleged that he "allow[ed] for circumstances that resulted in . . . K.C. succumbing to death by urosepsis, dehydration, and/or electrolyte imbalance." He asserts that the State "failed to prove beyond a reasonable doubt that [his] criminal conduct caused [K.C.'s] death."

[¶17] To prevail on his challenge to the sufficiency of the evidence, the defendant must demonstrate that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. State v. Littlefield, 152 N.H. 331, 350 (2005). Under this standard, however, we still consider the evidence in the light most favorable to the State and examine each evidentiary item in context, not in isolation. Id.

[¶18] To convict the defendant of negligent homicide, the State had to prove beyond a reasonable doubt that the defendant negligently caused K.C.'s death. See RSA 630:3, I. The Criminal Code defines negligence as follows:

> A person acts negligently with respect to a material element of an offense when he fails to become aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that his failure to become aware of it constitutes a gross deviation from the conduct that a reasonable person would observe in the situation.

RSA 626:2, II(d) (2016). Because the issue of criminal negligence is an objective test, the defendant's "carelessness must be such that its seriousness would be apparent to anyone who shares the community's general sense of right and wrong." Littlefield, 152 N.H. at 351 (quotation omitted). As a result, "[c]riminally negligent homicide requires not only a failure to perceive a risk of death, but also some serious blameworthiness in the conduct that caused it." Id. (quotation omitted).

[¶19] The evidence demonstrated that the defendant failed to appreciate the severity of K.C.'s health risks and failed to seek appropriate treatment for her. Good hygiene and avoiding infection were particularly important for K.C.

6

because she was born with only one kidney.  Nonetheless, the defendant moved K.C. into his grandparents' squalid house — despite DCYF's prohibition — where she slept in a dirty baby bouncer.  When a first responder examined K.C., he found that her fingernails were "extremely dirty" with a brown substance in her ears and under her neck.

[¶20] K.C. also experienced health problems in the weeks leading up to her death.  She had a severe lice infestation, and the defendant's brother testified that K.C. appeared "a little sluggish."  Dr. James explained how lice can cause sluggishness and generally weaken a child.  K.C.'s UTI spread to her organs and other parts of her body, worsening into probable urosepsis and contributing to K.C.'s dehydration.  Moreover, K.C.'s grandfather testified that K.C. had a stomach virus and vomited.  The defendant's brother also testified that K.C. was also breathing quickly, which could have been caused by the stress of an acute illness.  However, when he raised his concern for K.C.'s rapid breathing to the defendant, the defendant told him to "shut up."  K.C.'s cousin testified that K.C. coughed "[l]ike a mountain lion screaming" for weeks.  Despite these numerous health concerns — which were apparent to other family members — the defendant did not attempt to seek medical care for his daughter.  Viewing all the evidence and all reasonable inferences from it in the light most favorable to the State, we conclude that the State presented sufficient evidence to convict the defendant of negligent homicide beyond a reasonable doubt.  See id. at 350.

### III. Conclusion

[¶21] For the foregoing reasons, we need not decide whether the trial court's response to the jury's question was plain error because we conclude that the court's response did not affect the outcome of the trial.  We also conclude that the defendant's trial counsel did not render ineffective assistance of counsel when he failed to object to the court's response to the jury's question because the failure did not prejudice the result.  Finally, we conclude that the State presented sufficient evidence that the defendant committed negligent homicide.  Accordingly, we affirm.

Affirmed.

BASSETT and COUNTWAY, JJ., concurred.